## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## FORT LAUDERDALE DIVISION

| | | |
|---|---|---|
| **SARAH SHAW, REBECCA WILES, JENNIFER SCOTT, and ASHLEY HOWELL, Individually, and on Behalf of All Others Similarly Situated,** | § § § § § § § | |
| **Plaintiff,** | § § | **CIVIL ACTION NO. _____** |
| **v.** | § § § | **JURY TRIAL DEMANDED** |
| **THE SET ENTERPRISES, INC., a Florida corporation and JOE RODRIGUEZ, individually,** | § § § § § | |
| **Defendants.** | § § § | |

### CLASS/COLLECTIVE ACTION COMPLAINT

Come now the Plaintiffs, SARAH SHAW (Shaw), REBECCA WILES (Wiles), JENNIFER SCOTT (Scott) and ASHLEY HOWELL (Howell), individually and on behalf of all other similarly situated, and sues the Defendants THE SET ENTERPRISES, INC., a Florida corporation, and JOE RODRIGUEZ, individually as follows:

1.     Congress designed the Fair Labor Standards Act of 1938 ("FLSA") to remedy situations "detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. § 202(a).  To achieve this broad remedial purpose, the FLSA establishes minimum wage and overtime requirements for covered employees.  29 U.S.C. §§ 206, 207.  These provisions, coupled with an effective integrated cause of action within the FLSA, prevent employers from pilfering the wages

9847404 _1

rightfully earned by their employees.  *See, Billingsley v. Citi Trends, Inc.*, 13-12561, 2014 WL 1199501 (11th Cir. Mar. 25, 2014).

2.      This case implicates three adult entertainment clubs that are a joint business enterprise and conduct business by the trade names of "Cheetah Pompano Beach" (Cheetah Pompano), "Cheetah Hallandale Beach" (Cheetah Hallandale) and "Cheetah Palm Beach" (Cheetah PB).  The legal entity and employer implicated regarding Cheetah Hallandale is The Set Enterprises, Inc., a Florida limited liability company. The legal owner and employer implicated regarding Cheetah Pompano is Joe Rodriguez, Individually. The legal owner and employer implicated regarding Cheetah PB is Joe Rodriguez, Individually. Collectively, The Set Enterprises, Inc. and Joe Rodriguez shall be referred to as "Defendants".

3.      Defendants have a long-standing policy of misclassifying their employees as independent contractors and/or licensees.

4.      Defendants required and/or permitted Plaintiffs Shaw, Wiles, Scott and Howell ("Plaintiffs") to work as exotic dancers (collectively entertainers) at their adult entertainment clubs for up to and in excess of forty (40) hours per week, but refused to compensate them at the applicable minimum wage and overtime rate.    In fact, Defendants refused to compensate Plaintiffs at all for the hours they worked.  Plaintiffs' only compensation was in the form of tips from club patrons.

5.      Defendants' conduct violates the FLSA, which requires non-exempt employees, such as Plaintiffs, to be compensated for their overtime work at a rate of one and one-half times their regular rate of pay.  *See* 29 U.S.C. § 207(a).

6.      Furthermore, Defendants' practice of failing to pay tipped employees pursuant to 29 U.S.C. § 203(m), violates the FLSA's minimum wage provision as does Defendants' practice

of siphoning away those tips to distribute to non-tip eligible employees.  *See* 29 U.S.C. §§ 203, 206.

7.      Plaintiffs bring a collective action to recover the unpaid wages owed to them and all other similarly situated employees, current and former, of Defendants who worked at Cheetah Pompano in Pompano Beach, Florida, Cheetah Hallandale in Hallandale Beach, Florida and Cheetah PB in West Palm Beach, Florida at any time during the five year period before this Complaint was filed up to the present ("FLSA Class Members").  These Class Members should be informed of the pendency of this action and apprised of their rights to join in the manner envisioned by *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989) and its progeny.

8.      Plaintiffs further complain on behalf of themselves, and a class of other similarly situated current and former entertainer employees of the Defendants who worked in Florida, pursuant to Fed.R.Civ.P.23, that they are entitled to back wages from Defendants for hours/weeks of work for which they did not receive at least the Florida minimum wage, in violation of Article X, Section 24 of the Florida Constitution ("Florida Minimum Wage Claims").

## SUBJECT MATTER JURISDICTION AND VENUE

9.      This Court has jurisdiction over the subject matter of this action under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

10.     This Court has the authority to grant declaratory relief pursuant to the FLSA and the Federal Declaratory Judgment Act ("DJA"), 28 U.S.C. §§ 2201-02.

11.     This Court has jurisdiction over the Florida Minimum Wage Claims pursuant to 28 U.S.C. §1367, because the acts and omissions that give rise to Plaintiffs' FLSA claims are the same acts and omissions that give rise to Plaintiffs' Florida Minimum Wage Claims.

12.     Venue is proper in the Southern District of Florida because a substantial portion of the events forming the basis of this suit occurred in this District as the Defendants' clubs are

9847404 _1

located in this District.  In particular, the headquarters and principal place of business of THE

SET ENTERPRISES, INC. is 100 Ansin Blvd., Hallandale, Florida 33009. Joe Rodriguez resides

at 100 Ansin Blvd., Hallandale, Florida 33009. The location of Cheetah PB is 3342 Shawnee

Avenue, West Palm Beach, Florida 33409 and the location of Cheetah Pompano is 497 NW 31st

Avenue, Pompano Beach, Florida 33069.

13.     At all times material hereto Plaintiffs worked at the Defendants' clubs at these

locations.

## PARTIES AND PERSONAL JURISDICTION

14.     Plaintiff Shaw is an individual residing in Broward County, Florida.  Plaintiff's

written consent is attached hereto as Exhibit A.

15.     Plaintiff Wiles is an individual residing in Palm Beach County, Florida.

Plaintiff's written consent is attached hereto as Exhibit B.

16.     Plaintiff Scott is an individual residing in Brevard County, Florida. Plaintiff's

written consent is attached hereto as Exhibit C.

17.     Plaintiff Howell is an individual residing in Palm Beach County, Florida.

Plaintiff's written consent is attached hereto as Exhibit D.

18.     The FLSA Class Members are current and former entertainers who worked at

Cheetah Pompano, Cheetah PB and Cheetah Hallandale at any time during the three (3) years

prior to the filing of this Complaint up to the present.

19.     The Florida Class Members are current and former entertainers who worked at

Cheetah Pompano, Cheetah PB and Cheetah Hallandale at any time during the five (5) years

before this Complaint was filed up to the present.

9847404 _1

20.     Defendant The Set Enterprises, Inc. is a domestic corporation doing business in Florida for the purpose of accumulating monetary profit. This Court has personal jurisdiction over this Defendant because it is a citizen of Florida.

21.     Defendant Joe Rodriguez is an individual residing in Florida.  This Court has personal jurisdiction over this Defendant because he is a citizen conducting business in Florida and upon information and belief is domiciled in Hallandale, Florida.

## FLSA COVERAGE

22.     In an FLSA case, the following elements must be met:  "(1) [plaintiff] is employed by the defendant, (2) the defendant engaged in interstate commerce, and (3) the defendant failed to pay [plaintiff] minimum or overtime wages."  *Freeman v. Key Largo Volunteer Fire & Rescue Dept., Inc.,* 494 Fed. Appx. 940, 942 (11th Cir. 2012) *cert. denied,* 134 S. Ct. 62, (U.S. 2013).

### Employer/Employee Relationship

23.     "To be 'employed' includes when an employer 'suffer[s] or permit[s] [the employee] to work.'" *Id.* at 942 (citing 29 U.S.C. § 203(g)). "To determine if an individual is an employee, 'we look at the economic reality of all the circumstances' surrounding the activity." *Id.* (citing *Brouwer,* 139 F.3d at 819).  "We refer to this test as the 'economic reality' test."  *Id.* (citing *Villarreal v. Woodham,* 113 F.3d 202, 205 (11th Cir.1997)).  "The touchstone of the economic reality test is the alleged employee's economic dependence on the employer."  *Id.*

24.     Here, Defendants had the power to hire and fire Plaintiffs and class members.

25.     Defendants controlled Plaintiffs' work schedule by scheduling Plaintiffs and other entertainers to work certain days and certain shifts.

26.     Defendants required Plaintiffs and other entertainers to work a certain number of days during the week.

9847404 _1

27. Defendants provided training, if needed, through an orientation program that taught the entertainers "everything [they] need to know."

28. Defendants controlled the clothing to be worn by Plaintiffs and other entertainers while at work.

29. Defendants required Plaintiffs and other entertainers to promote their services to club customers and to sell promotional items including items bearing the Defendants' logo.

30. Defendants determined the rate and the method of payment of all entertainers including Plaintiffs. Defendants set the price for their customers to pay entertainers for "lap dances", "semi-private" dances and "private" dances.

31. Defendants required the Plaintiff and other entertainers to abide by their "house rules" which included rules regarding their dress code, the manner in which they conducted themselves while working and other job related activities.

32. Additionally, Defendants required Plaintiffs and all other entertainers to pay fees depending on the day and shift they worked. Plaintiffs and all other entertainers had to tip out certain employees at the end of their shift including, but not limited to, the DJ, security, house mom, and the club.

33. Defendants controlled the amount and manner in which the Plaintiffs and other entertainers were paid through "performance fees" determined solely at the discretion of the Defendants.

34. Entertainers are an integral part of Defendants' strip club.

35.     The job duties of Plaintiffs and other entertainers consisted of dancing in designated areas and performing dances for Defendants' customers at the club.  These job duties require little to no skill. [1]

36.     Defendants maintained records regarding the time Plaintiffs and all other entertainers arrived and left the club.

37.     At all material times, Defendants have been employers within the meaning of § 3(d) of the FLSA.  29 U.S.C. § 203(d).

38.     Moreover, the Fair Labor Standards Act ("FLSA") defines the term "employer" broadly to include "any person acting directly or indirectly in the interest of an employer in relation to any employee."  29 U.S.C. § 203(d).

39.     The statutory definition of "employer" includes corporate officers, participating shareholders, supervisors, managers, or other employees where that individual exercises some supervisory authority over employees and is responsible in whole or in part for the alleged violation.  *See id.*; *Reich v. Circle C. Investments, Inc.*, 998 F.2d 324, 329 (5th Cir. 1993); *Donovan v. Grim Hotel Co.*, 747 F.2d 966, 971-72 (5th Cir. 1984).

40.     Defendant Joe Rodriguez is the owner of Cheetah Pompano and Cheetah PB while Defendant The Set Enterprises, Inc. is the owner of Cheetah Hallandale.

---

[1] *See, Freund v. Hi-Tech Satellite, Inc.*, 185 Fed. Appx. 782, 783 (11th Cir. 2006) ([C]ourts must determine whether, as a matter of economic realit[y], an individual is an employee or an independent contractor in business for himself. Several factors guide this inquiry: (1) the nature and degree of the alleged employer's control as to the manner in which the work is to be performed; (2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; (3) the alleged employee's investment in equipment or materials required for his task, or his employment of workers; (4) whether the service rendered requires a special skill; (5) the degree of permanency and duration of the working relationship; (6) the extent to which the service rendered is an integral part of the alleged employer's business.") (internal citations omitted); *see also, Clincy v. Galardi S. Enterprises, Inc.*, 808 F. Supp. 2d 1326, 1343 (N.D. Ga. 2011) (applying economic reality test and finding exotic dancers were employees not independent contractors).

9847404 _1

41.     Defendants Joe Rodriguez and The Set Enterprises, Inc. (The Set) are involved in the day-to-day business operation of Cheetah Pompano, Cheetah Hallandale and Cheetah PB (collectively, the clubs).

42.     Defendants Joe Rodriguez and The Set have responsibility for the supervision of the entertainers at the clubs.

43.     Defendants Joe Rodriguez and The Set are responsible for the compensation or lack thereof paid to entertainers at the clubs.

44.     Defendants Joe Rodriguez and The Set have the authority to hire and fire employees, the authority to direct and supervise the work of employees, the authority to sign on the business's checking accounts, including payroll accounts, and the authority to make decisions regarding employee compensation and capital expenditures.

45.     Defendants Joe Rodriguez and The Set are responsible for the day-to-day affairs of the clubs. In particular, they were responsible for determining whether the club complied with the Fair Labor Standards Act.

46.     Defendants Joe Rodriguez and The Set controlled the nature, pay structure, and employment relationship of the Plaintiffs and Class Members.

47.     As such, Defendants Joe Rodriguez and The Set are the employers of the Plaintiffs and Class Members within the meaning of § 3(d) of the FLSA, and are jointly and severally liable for all damages.

### Interstate Commerce

48.     "The Fair Labor Standards Act (the "FLSA"), 29 U.S.C. § 207(a) (1), requires an employer to pay overtime compensation to an hourly worker if the employee can establish individual coverage or enterprise coverage." *Silver v. Dr. Neal Krouse, D.O., P.A.*, 06-60634-CIV, 2007 WL 4098879 *2 (S.D. Fla. Nov. 16, 2007) (citing *Thorne v. All Restoration Svcs.,*

9847404 _1

*Inc.,* 448 F.3d 1264, 1265 (11th Cir.2006)). "To qualify for enterprise coverage, Defendants must 'ha[ve] employees engaged in commerce or in the production of goods for commerce, or [ ] ha[ve] employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and is an enterprise whose annual gross volume of sales made or business done is not less than $500,000.'" *Id.* (citing 29 U.S.C. § 203(s)(1)(A)(i) and (ii)). "The phase 'engaged in commerce' is interpreted broadly and liberally." *Id.* (citing *Alonso v. Garcia*, 147 Fed. Appx. 815, 816 (11th Cir. 2005)).

49.     At all material times, Defendants have been an enterprise within the meaning of 3(r) of the FLSA. 29 U.S.C. § 203(r).

50.     At all material times, Defendants have been an enterprise in commerce or in the production of goods for commerce within the meaning of 3(s)(1) of the FLSA because they have had employees engaged in commerce.  29 U.S.C. § 203(s)(1).

51.     Specifically, Defendants' employees have sold goods—such as alcoholic beverages—that have been moved or produced in interstate commerce to Defendants' patrons. Additionally, Defendants' employees, including Plaintiff, have handled materials that have been moved or produced in interstate commerce, which were used in the course of Defendants' business operations.

52.     Defendants advertise on the internet, process credit cards from out of state patrons, communicate via mail, email, and telephone with patrons outside of the state of Florida, and sell their merchandise across state lines.

53.     Furthermore, Defendants have had, and continue to have, an annual gross business volume in excess of the statutory standard.

54.     At all material times, each Plaintiff was an individual employee who engaged in commerce or in the production of goods for commerce as required by 29 USC § 206-207.

9

**Wage Violations**

55.     Defendants misclassify Plaintiffs and all other entertainers as independent contractors and/or licensees.

56.     Defendants failed to pay Plaintiffs and all other entertainers they hire any compensation whatsoever.

57.     The money Plaintiffs received were tips directly received from Defendants' customers.

58.     Defendants siphoned Plaintiffs' and all other entertainers' tips by requiring them to share their tips with other employees who are not eligible to participate in a tip pool.

59.     Defendants siphoned Plaintiffs' and all other entertainers' tips by requiring them to pay fees, including house and or license fees, leave early fees, and credit card fees from their tips.

**FACTS**

60.     Plaintiffs and Class Members have all been victimized by Defendants' common policy and plan to violate their rights under the FLSA by denying them minimum wage, proper overtime, and the tips they lawfully earned.

61.     Defendants operate adult entertainment clubs at: 497 NW 31st Avenue, Pompano Beach, Florida 33069 (Cheetah Pompano); 3342 Shawnee Avenue, West Palm Beach, Florida 33409 (Cheetah PB) and 100 Ansin Boulevard, Hallandale, Florida 33009 (Cheetah Hallandale).

62.     Defendants employ entertainers at the clubs.

63.     Plaintiffs are former entertainers at the clubs.

64.     Plaintiffs worked on a regular basis for the clubs.

65.     Plaintiffs have first-hand personal knowledge of the pay violations at the clubs.

66.     The entertainers at the clubs are compensated exclusively through tips from

10

9847404 _1

Defendants' customers.

67.    Defendants did not pay the entertainers compensation for any hours worked at their establishments.

68.    Defendants charged the entertainers certain fees per shift worked.

69.    Defendants charged the entertainers a fee each day when they arrived at work.

70.    Defendants also required the entertainers to share their tips with employees who do not customarily and regularly receive tips, including the disc jockeys, security and the managers.

71.    Defendants illegally classified the entertainers as independent contractors/licensees.  However, at all times, the entertainers were employees of Defendants as that term is defined by the FLSA, Florida law, and relevant case law.

72.    Defendants hired, fired and supervised the entertainers.  Defendants also set the schedule for the entertainers. Defendants controlled the details of the entertainers' jobs, including setting the prices to charge customers for dances and imposing limitations on how to interact with the clubs' customers.

73.    Defendants also controlled the entertainers' appearances with respect to their attire and makeup.

74.    Defendants disciplined the entertainers for not following club rules.

75.    Defendants tracked the time and days the entertainers worked just as is common for typical employer-employee relationships.

76.    In addition, Defendants instructed the entertainers about when, where, and how the entertainers were to perform their work.

77.    The following further facts demonstrate the entertainers' status as employees:

        a)    Defendants had the sole right to hire and fire the entertainers;

9847404 _1

b)    Defendants require dancers to complete an employee application as a prerequisite to their employment;

c)    Defendants made the decision not to pay overtime;

d)    Defendants made the decision not to compensate at the FLSA minimum wage rate;

e)    Defendants provided the entertainers with music equipment and a performing stage;

f)    Defendants controlled the entertainers' music;

g)    The dancers have made no financial investment with Defendants' business;

h)    The dancers were hired as permanent employees and worked for Defendants for several years;

i)    Defendants supervised the entertainers; and

j)    Defendants scheduled entertainers and as such had sole control over their opportunity for profit.

78.    Defendants misclassified Plaintiffs and Class Members as independent contractors to avoid their obligations to pay them pursuant to the FLSA.

79.    Plaintiffs and Class Members are not exempt from the overtime and minimum wage requirements under the FLSA.

80.    Although Plaintiffs and Class Members were required frequently to work more than forty (40) hours per workweek, they were not compensated at the FLSA mandated time-and-a-half rate for hours in excess of forty (40) per workweek.  In fact, they receive no compensation whatsoever from Defendants and thus, Defendants violate the minimum wage requirement of the FLSA. *See* 29 U.S.C. § 206.

9847404 _1

81.     Defendants' method of paying Plaintiffs in violation of the FLSA was willful and was not based on a good faith and reasonable belief that its conduct complied with the FLSA. Defendants misclassified Plaintiffs with the intent to avoid paying them in accordance to the FLSA.

82.     Defendants have been in the exotic dancing industry for many years and are familiar with the long line of federal cases holding that entertainers in this industry are employees as that term is defined by the FLSA.

83.     Further, at all material times, Defendants have operated as a "single enterprise" within the meaning of 3(r)(1) of the FLSA. 29 U.S.C. § 203(r)(1).   That is, Defendants perform related activities through unified operation and common control for a common business purpose. *See Brennan v. Arnheim and Neely, Inc.*, 410 U.S. 512, 515 (1973); *Chao v. A-One Med. Servs., Inc.*, 346 F.3d 908, 914–15 (9th Cir. 2003).

84.     All Defendants have a common business purpose of for profit adult entertainment.

85.     Defendants Joe Rodriguez and The Set keep employment records for the clubs.

86.     Defendants Joe Rodriguez and The Set have the ultimate authority regarding hiring and firing employees at the clubs.

87.     Defendants Joe Rodriguez and The Set own and operate the clubs.

88.     Defendants Joe Rodriguez and The Set created and implemented a companywide policy of misclassifying exotic entertainers as independent contractors at the clubs.

89.     Defendants operate a chain of strip clubs under the assumed name "Cheetah." Indeed, they advertise themselves as such on their websites.   *See* Exhibit E (Defendants' websites use the same logo and marketing materials to advertise its chain of clubs). The fact that they run each Cheetah location identically and their customers can expect the same kind of customer service regardless of the location is Defendants' main advertising selling point.

13

90.     Defendants represent themselves to the general public as a chain of strip clubs—Cheetah—operating at multiple locations.  They share employees, have a common management, pool their resources, operate from the same headquarters, have common ownership, and have the same operating name.  This is a family of strip clubs that advertises together, use the same logo, provides the same array of services to its customers, and uses the same business model.  The "Cheetah" family of strip clubs exists under the control and direction of Defendants.  This family of strip clubs provides the same service product to its customers by using a set formula when conducting its business.  Part of that set formula is the wage violation alleged in this complaint.  These facts represent a classic example of "corporate fragmentation."

91.     The pay practices and job duties of entertainers described herein apply to all of the clubs.

## COUNT I: VIOLATION OF 29 U.S.C. § 207

92.     Plaintiffs incorporate all allegations contained in paragraphs 1 through 91.

93.     Defendants' practice of failing to pay Plaintiffs and Class Members time-and-a-half rate for hours in excess of forty (40) per workweek violates the FLSA. 29 U.S.C. § 207.

94.     None of the exemptions provided by the FLSA regulating the duty of employers to pay overtime at a rate not less than one and one-half times the regular rate at which its employees are employed are applicable to Defendants or Plaintiffs.

## COUNT II: VIOLATION OF 29 U.S.C. § 206

95.     Plaintiffs incorporate all allegations contained in paragraphs 1 through 91.

96.     Defendants' practice of failing to pay Plaintiffs and Class Members at the required minimum wage rate violates the FLSA.  29 U.S.C. § 206.  In fact, Defendants do not compensate the entertainers whatsoever for any hours worked.

9847404 _1

97.     None of the exemptions provided by the FLSA regulating the duty of employers to pay employees for all hours worked at the required minimum wage rate are applicable to Defendants or Plaintiffs.

98.     Defendants failed to keep adequate records of Plaintiffs' and Class Members' work hours and pay in violation of section 211(c) of the FLSA.  *See* 29 U.S.C. § 211(c).

99.     Federal law mandates that an employer is required to keep for three (3) years all payroll records and other records containing, among other things, the following information:

a)      The time of day and day of week on which the employees' work week begins;

b)      The regular hourly rate of pay for any workweek in which overtime compensation is due under section 7(a) of the FLSA;

c)      An explanation of the basis of pay by indicating the monetary amount paid on a per hour, per day, per week, or other basis;

d)      The amount and nature of each payment which, pursuant to section 7(e) of the FLSA, is excluded from the "regular rate";

e)      The hours worked each workday and total hours worked each workweek;

f)      The total daily or weekly straight time earnings or wages due for hours worked during the workday or workweek, exclusive of premium overtime compensation;

g)      The total premium for overtime hours. This amount excludes the straight-time earnings for overtime hours recorded under this section;

h)      The total additions to or deductions from wages paid each pay period including employee purchase orders or wage assignments;

9847404 _1

i)     The dates, amounts, and nature of the items which make up the total additions and deductions;

j)     The total wages paid each pay period; and

k)     The date of payment and the pay period covered by payment.

29 C.F.R. 516.2, 516.5.

100.    Defendants have not complied with federal law and have failed to maintain such records with respect to Plaintiffs and Class Members.

101.    Because Defendants' records are inaccurate and/or inadequate, Plaintiffs and Class Members can meet their burden under the FLSA by proving that they, in fact, performed work for which they were improperly compensated, and produce sufficient evidence to show the amount and extent of the work "as a matter of a just and reasonable inference." *See, e.g.*, *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946).

## COUNT III: VIOLATION OF ARTICLE X, SECTION 24 OF THE FLORIDA CONSTITUTION

102.    Plaintiffs incorporate all allegations contained in paragraphs 1 through 91.

103.    Plaintiffs, and those similarly situated employees, are/were entitled to be paid at least the Florida minimum wage for each hour/week worked during employment with Defendants.

104.    Specifically, Plaintiffs, and those similarly situated employees, were not paid the proper minimum wage, as required by Article X, Section 24 of the Florida Constitution.

105.    Defendants willfully failed to pay Plaintiffs, and those similarly situated employees, minimum wages for one or more weeks during Plaintiffs' employment contrary to Article X, Section 24 of the Florida Constitution.

16

9847404 _1

106.     Although such prerequisites are unconstitutional, Plaintiffs have complied with all statutory prerequisites to bringing her claim pursuant to Article X, Section 24 of the Florida Constitution.

107.     Specifically, on or about September 17, 2015, Plaintiffs Shaw, Wiles, Scott and Howell served Defendants with Notices pursuant to Fla. Stats. § 448.110, on their behalf, and those entertainers similarly situated to Plaintiff.  A copy of Plaintiffs' Notice Letter is attached hereto as **Exhibit F**.

108.     More than 15 days have elapsed since Plaintiffs service of their Notice on Defendants, and Defendants have failed to make payment to Plaintiffs.

109.     As a direct and proximate result of Defendants' deliberate underpayment of wages, Plaintiffs, and those similarly situated employees, have been damaged in the loss of minimum wages for one or more weeks of work with Defendants.

110.     Plaintiffs are entitled to an award of damages in an amount equal to the relevant Florida Minimum Wage, and an equal amount as liquidated damages.

111.     Plaintiffs are entitled to an award of reasonable attorneys' fees and costs, pursuant to Article X, Section 24 of the Florida Constitution.

## FLSA COLLECTIVE ACTION ALLEGATIONS

112.     Plaintiffs incorporate all allegations contained in paragraphs 1 through 91.

113.     As part of their regular business practices, Defendants have intentionally, willfully and repeatedly harmed Plaintiffs and Class Members by engaging in a pattern, practice, or policy of violating the FLSA on a class wide basis, as described above.

114.     Although Defendants permitted and/or required FLSA Class Members to work in excess of forty (40) hours per workweek, Defendants have denied them full compensation for

9847404 _1

their hours worked over forty. Defendants have also denied them full compensation at the federally mandated minimum wage rate.

115.    Class Members perform or have performed the same or similar work as Plaintiffs. In particular, Plaintiffs and Class Members all worked as entertainers under the same conditions and subject to the same violations of the FLSA.

116.    Many FLSA Class Members regularly work or have worked in excess of forty (40) hours during a workweek.

117.    Defendants have classified and continue to classify FLSA Class Members as independent contractors.

118.    FLSA Class Members are not exempt from receiving overtime pay and/or minimum wage at the federally mandated minimum wage rate under the FLSA.

119.    As such, FLSA Class Members are similar to Plaintiffs in terms of job duties, pay structure, misclassification as independent contractors and/or the denial of overtime and minimum wage.

120.    Defendants' failure to pay overtime compensation and hours worked at the minimum wage rate required by the FLSA results from generally applicable policies or practices, and does not depend on the personal circumstances of the Class Members.

121.    The experiences of Plaintiffs, with respect to their pay, are typical of the experiences of FLSA Class Members.

122.    The experiences of Plaintiffs, with respect to their job duties, are typical of the experiences of Class Members.

123.    The specific job titles or precise job responsibilities of each Class Member does not prevent collective treatment.

9847404 _1

124.     All Class Members, irrespective of their particular job requirements, are entitled to overtime compensation for hours worked in excess of forty during a workweek.

125.     All Class Members, irrespective of their particular job requirements, are entitled to compensation for hours worked at the federally mandated minimum wage rate.

126.     Although the exact amount of damages may vary among Class Members, the damages for Class Members can be easily calculated by a formula.  The claims of all Class Members arise from a common nucleus of facts.  Liability is based on a systematic course of wrongful conduct by Defendants that caused harm to all Class Members.

127.     The Plaintiffs and the Class Members held the same job title: Dancers/Entertainers.

128.     The Defendants have classified all of its entertainers as independent contractors/licencees from at least September 17, 2010 to present.

129.     The individually named Defendants instituted, permitted, and/or required the policy and practice of classifying all entertainers at the clubs as independent contractors.

130.     The individually named Defendants instituted, permitted, and/or required the policy and practice of charging all entertainers at the clubs a house fee.

131.     The individually named Defendants instituted, created, and/or permitted the policy and practice of requiring all entertainers at the clubs to tip out staff including the DJ, valet, security, house mom and floor host.

132.     As such, the FLSA Class of similarly situated Plaintiffs is properly defined as follows:

**The FLSA Class Members are all of Defendants' current and former exotic dancer/entertainers who worked at Cheetah Pompano, Cheetah PB and Cheetah Hallandale at any time during the three years before this Complaint was filed up to the present.**

9847404 _1

## FLORIDA CLASS ACTION ALLEGATIONS

133.   Plaintiffs incorporate herein paragraphs 1 through 91 above as if fully set forth herein.

134.   Plaintiffs sue on their own behalf and on behalf of a class of persons under Rules 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

135.   Plaintiffs bring their Florida Minimum Wage Claims on behalf of all persons who were employed by Defendants at any time within five (5) years of the filing of this Complaint, to the entry of judgment in this case (the "Florida Class Period"), who were entertainers and who have not been paid at least the applicable Florida Minimum Wage for hours/weeks worked, as required, in violation of Article X, Section 24 of the Florida Constitution (the "Florida Class").

136.   The persons in the Florida Class identified above are so numerous that joinder of all members is impracticable.  Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control of the Defendants, upon information and belief, there are between 200 and 500 members of the Florida Class during the Florida Class Period.

137.   The claims of Plaintiffs are typical of the claims of the Florida Class, and a class action is superior to other available methods of fair and efficient adjudication of the controversy - - particularly in the context of wage and hour litigation where individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against corporate defendants.

138.   The Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

9847404 _1

139.    Specifically, Defendants illegally misclassified all of their exotic entertainer employees, including Plaintiffs as independent contractors and failed to pay them minimum wages as mandated by Article X, Section 24 of the Florida Constitution.

140.    Application of this policy or practice does/did not depend on the personal circumstances of Plaintiffs or those joining this lawsuit.  Rather, the same policy or practice which resulted in the non-payment of minimum wages to Plaintiffs applied and continues to apply to all class members.  Accordingly, the "Florida Class Members" are properly defined as:

> **All of Defendants' current and former exotic dancers/entertainers who worked at Cheetah Pompano, Cheetah PB and Cheetah Hallandale at any time during the five (5) years before this Complaint was filed up to the present.**

141.    Plaintiffs are committed to pursuing this action and have retained competent counsel experienced in employment law and class action litigation.

142.    Plaintiffs have the same interests in this matter as all other members of the Florida class and Plaintiffs' claims are typical of the Florida Class.

143.    There are questions of law and fact common to the Florida Class which predominate over any questions solely affecting the individual members of the Class, including but not limited to:

a.    whether the Defendants employed the members of the Florida Class within the meaning of Article X, Section 24 of the Florida Constitution;

b.    whether the Defendants failed to keep true and accurate time records for all  hours worked by Plaintiffs and members of the Florida Class;

c.    what proof of hours worked is sufficient where employers fail in their duty to maintain time records;

d.    whether Defendants misclassified their entertainer employees as independent contractors;

21

e.      whether Defendants failed and/or refused to pay the members of the Florida Class at least the Florida Minimum Wage in one of more workweeks;

f.      whether the Defendants are liable for all damages claimed hereunder, including but not limited to, costs, disbursements, and attorney's fees; and

g.      whether the Defendants should  be enjoined from such violations of Article X, Section 24 of the Florida Constitution in the future.

## JURY DEMAND

144.    Plaintiffs and Class Members hereby demand a trial by jury.

## PRAYER FOR RELIEF

145.    For these reasons, Plaintiffs, FLSA Class Members and Florida Class Members, respectfully request that judgment be entered in their favor awarding the following relief:

a.  Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and (3) on behalf of the members of the Florida Class and appointing Plaintiffs and their counsel to represent the Class;

b.  Designation of this action as a collective action on behalf of the Collective Action Members and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, appraising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. §216(b) and appointing Plaintiffs and their counsel to represent the Collective Action members;

c.  Declaring, pursuant to 29 U.S.C. §§2201 and 2202, that the acts and practices complained of herein are in violation of the maximum hour and minimum wage provisions of the FLSA, and  Article X, Section 24 of the Florida Constitution;

d.  Overtime compensation for all hours worked over forty in a workweek at the

9847404 _1

applicable time-and-a-half rate;

e. All unpaid wages and overtime compensation due under the FLSA;

f. All unpaid wage and overtime compensation due under Article X, Section 24 of the Florida Constitution;

g. All unpaid minimum and overtime wages in accordance with the law mentioned herein;

h. All misappropriated tips;

i. All misappropriated funds that were labeled as fees or otherwise;

j. An equal amount of all owed wages and misappropriated funds and tips as liquidated damages as allowed under the FLSA;

k. An equal amount of all owed wages and misappropriated funds and tips as liquidated damages as allowed under Article X, Section 24 of the Florida Constitution;

l. Reasonable attorney's fees, costs and expenses of this action as provided by the FLSA; and

m. Such other relief to which Plaintiffs and Class Members may be entitled, at law or in equity.

Dated: October 9, 2015

Respectfully submitted,

/s/ Scott J. Hertz
Jack Morgan, Esquire
FL Bar No. 126527
Scott J. Hertz, Esquire
FL Bar No. 98552
2320 First Street
Suite 1000
Fort Myers, Florida 33901
Tel: 239.338.4218

23

9847404 _1

Fax: 239.337.3850
E-mail: jmorgan@ralaw.com
        Serve.jmorgan@ralaw.com
        shertz@ralaw.com
        serve.shertz@ralaw.com

- and -

John B. Gallagher, Esquire
FL Bar No. 271225
2631 East Oakland Park Boulevard
Suite 201
Fort Lauderdale, Florida 33306
Tel: 954.524.1888
Fax: 954.524.1887
E-mail: gal2701@aol.com

ATTORNEY IN CHARGE FOR PLAINTIFFS &
CLASS MEMBERS

9847404 _1