UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-62152-CIV-DIMITROULEAS

| | |
|---|---|
| SARAH SHAW, REBECCA WILES, JENNIFER SCOTT, and ASHLEY HOWELL, Individually, and on Behalf of All Others Similarly Situation, | ) ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) |
| THE SET ENTERPRISES, INC., a Florida Corporation, et al. | ) ) ) |
| Defendants. | ) ) ) |

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
WITH INCORPORATED MEMORANDUM OF LAW**

Defendants, The Set Enterprises, Inc. ("The Set") and Faneuil Entertainment, Inc. ("Faneuil") (collectively "Defendants"), pursuant to Fed. R. Civ. P. 56 and S.D. Fla. L. R. 56.1, move for summary judgment seeking dismissal with prejudice of Plaintiff's Amended Complaint alleging unpaid overtime compensation under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA") and unpaid minimum wages under the FLSA and the Florida Minimum Wage Act, § 24, Art. X of the Florida Constitution ("FMWA"). As demonstrated by the deposition testimony, affidavits, and documents submitted herein, Plaintiffs cannot prove a claim for unpaid minimum or overtime wages under the FLSA or the FMWA, and summary judgment is appropriate.

**PRELIMINARY STATEMENT[1]**

Plaintiffs are exotic dancers ("Entertainers") who formerly performed at Defendants' gentlemen's clubs (the "Clubs"). Specifically, Plaintiffs utilized the Clubs' premises to provide fully stage dances, table dances, friction dances, and private dances, among

---

[1] Pursuant to S.D. Fla. L.R. 56.1(a), Defendants have submitted a detailed Statement of Undisputed Facts ("SOF") supported by deposition excerpts, affidavits, and exhibits, all of which have been filed concurrently with this Motion.

other forms of entertainment, for their customers and the Clubs' customers at the Clubs.  In order to be able to use the Clubs' premises, Plaintiffs entered into written Dancer Licensing Agreements with Defendants (the "Agreements").  Through the Agreements, Defendants granted Plaintiffs licenses to utilize the Clubs' stages, dressing rooms, and property for their performances and to retain their dance fees and tips in exchange for paying modest fees to Defendants.   Plaintiffs were not employees of Defendants, nor were they independent contractors.  They were licensees.  Defendants did not control how Plaintiffs performed, when Plaintiffs performed, or even if Plaintiffs performed.  Per the Agreement, Plaintiffs were not compensated by Defendants, but instead received the fees and tips that Plaintiffs directly negotiated from their customers and the Club's customers.  Notwithstanding their Agreements, Plaintiffs have brought this action seeking to recover minimum and overtime wages for each hour they performed in the Clubs, while ignoring the significant fees and tips they were paid by customers for these same performances, simply because courts around the country have been finding that exotic dancers should have been classified as employees at other clubs.

As with any case where a plaintiff alleges misclassification under the FLSA, it is the day-to-day job duties that control the analysis, not the job title.  For example, a janitor can be given the title of Manager of Environmental Services.  However, if his only job duty is to take out the garbage and sweep the floors, he does not qualify for an exemption from the overtime provisions of the FLSA because he is not performing exempt job duties.   The fact that he has the title of "Manager" is not dispositive. The same analysis must apply here.  In the instant case, Plaintiffs allege that because they were "exotic dancers"" at the Clubs, they must succeed on their misclassification claims.  They have argued that other courts around the country have determined that exotic dancers should be classified as employees – therefore they, too, should succeed on their claims, by virtue of their title.

Unlike those other cases, however, this case has unique, undisputed facts that demonstrate the Plaintiffs were not misclassified by the Clubs.  The facts in this case clearly demonstrate that, when one looks at the undisputed day-to-day duties of the Plaintiffs and their interactions with the Clubs, based on the Plaintiffs' own sworn deposition testimony, no employer-employee relationship existed between Plaintiffs and Defendants.  The undisputed facts in this case clearly demonstrate that Plaintiffs cannot properly be deemed "employees,"

under the FLSA or the FMWA – even though exotic dancers at other clubs were properly determined to be misclassified employees of those clubs.  The title, alone, cannot be dispositive.

The undisputed evidence in this case shows, for example, that unlike exotic dancers at other clubs, Plaintiffs did not a work schedule and did not need to notify the Clubs in advance if they planned to perform on any given night.  They were free to show up for work when they chose to, they were free to leave when they chose to, and they were free to stop showing up to perform at the Clubs without notice and without repercussion.  Unlike at other clubs, Plaintiffs did not have set job duties.  They were free to do whatever they wanted to do when at Defendants' Clubs (*e.g.*, dance on stage, dance on tables, conduct private dances, talk to customers, or do nothing but sit in the dressing room texting their friends).  Plaintiffs testified that, as Licensees, they were free to choose their own music, their own costumes, their shoes, makeup, themes, and stage names used during their performances.  They testified that the Clubs had no involvement in Plaintiffs' clothing, appearances, performances, or what Plaintiffs must do during their time at the Clubs.  Plaintiffs testified that they negotiated with customers to determine their fees depending on the particular type of performance a customer requested (*e.g.* a table dance, a friction dance, or time spent together in a chat room/champagne room).  The only "rules" Defendants required Plaintiffs to follow involved legal and safety requirements (*e.g.*, no prostitution, no drugs).  Unlike exotic dancers in other wage cases, Plaintiffs in the instant case were not disciplined for failing to perform certain "duties" or violating any "rules."

The simple fact is the relationship between Plaintiffs and Defendants in this case is very different from the relationship in other cases where exotic dancers were determined to be employees of a club.  At Defendants' Clubs, the relationship between Entertainers and the Clubs intentionally was structured to comply with the facts in those cases where courts have found dancers to be independent contractors/licensees.  While Plaintiffs have and undoubtedly will again cite to a number of cases finding exotic dancers to be employees, not all courts have made such a ruling, and each case must be reviewed on its own merits.  Given the unique, undisputed facts in this case, Plaintiffs in the instant case, who enjoyed the flexibility and tax benefits of not being classified as an employee, are identical to the dancers found to be non-employees by courts based on a review of the relevant factors.  Because the undisputed record evidence demonstrates that Plaintiffs cannot establish an employer-employee relationship between them and the Clubs,

as a matter of law, summary judgment is appropriate, and Plaintiffs' Amended Complaint should be dismissed, with prejudice.

## MEMORANDUM OF LAW
## SUMMARY JUDGMENT STANDARD

"A motion for summary judgment should be granted 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Delgado v. U.S. Dep't of Transp.,* 709 F. Supp. 2d 1360, 1364 (S.D. Fla. 2010) (citing Fed. R. Civ. P. 56(c)). "By its very terms, this standard provides that 'the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there will be no genuine issue of material fact.'" *Delgado,* 709 F. Supp. 2d at 1364 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). A fact is "material" if it might affect the outcome of the case under the governing law. *Id.* (citations omitted). Plaintiffs "may not simply rest upon the allegations of [their] Amended Complaint. Rather, [they] have a duty to present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Jeudy v. Holder*, No. 10-22873-CV, 2011 U.S. Dist. LEXIS 128746, at *10 (S.D. Fla. Nov. 7, 2011) (citation omitted). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990). "If the evidence advanced by the non-moving party is merely colorable, or is not significantly probative, then summary judgment may be granted." *Anderson*, 477 U.S. at 242, 249-50.

## POINT I

## THE UNDISPUTED FACTS DEMONSTRATE PLAINTIFFS
## ARE NOT EMPLOYEES UNDER THE FLSA

The FLSA only applies to employees, not licensees or independent contractors. *See Freund v. Hi-Tech Satellite, Inc*., 185 Fed. Appx. 782, 782 (11th Cir. 2006). To determine if an employer-employee relationship exists, this circuit utilizes an "economic realities test." *Scantland v. Jeffry Knight, Inc*., 721 F.3d 1308, 1312 (11th Cir. 2013). "At the heart of … the economic realities test, [is] a 'fact intensive' test requiring 'individualized analysis . . . to determine whether [a person] is an independent contractor or an employee for FLSA purposes.'"

CASE NO. 15-62152-CIV-DIMITROULEAS

*Peña v. Handy Wash, Inc*., 2015 U.S. Dist. LEXIS 180653, at *30-31 (S.D. Fla. May 22, 2015) (citing *Demauro v. Limo, Inc*., 2011 U.S. Dist. LEXIS 1229, at *11 (M.D. Fla. Jan. 3, 2011)).  In conducting this individualized analysis, the courts of this circuit evaluate the following non-exhaustive considerations: (1) the permanency of the employment relationship; (2) the degree of skill required for rendering services; (3) the worker's investment in equipment or materials for the task; (4) the worker's opportunity for profit or loss, depending upon skill; (5) the degree of the alleged employer's right to control the manner in which the work is performed; and (6) whether the service rendered is an integral part of the alleged employer's business. *Id*.

No criterion by itself is controlling, rather, courts give weight to each criterion "according to how much light it sheds on the nature of the economic dependence of the putative employee on the employer." *Perdomo v. Ask 4 Realty & Mgmt., In*c., 298 Fed. Appx. 820, 821 (11th Cir. 2008) (*citing Antenor v. D&S Farms*, 88 F.3d 925, 928-33 (11th Cir. 1996)).  Also, the determination of employment status under the FLSA is a question of law.  *See Villarreal v. Woodman*, 113 F.3d 202, 205 (11th Cir. 1997).  For the reasons set out more fully below, Plaintiffs cannot be classified as employees under the economic realities test and, consequently, the wage requirements under the FLSA  and the FMWA are inapplicable.  As such, summary judgment in favor of Defendants is warranted as a matter of law.

A.    **Plaintiffs Cannot Demonstrate They Are Employees Under the Economic Realities Test**

In the case at bar, Plaintiffs cannot establish an employer-employee relationship under the economic realities test because, *inter alia*:  (1) Plaintiffs had significant control over the manner in which their work was performed, as each Plaintiff individually controlled and set her own schedule, decided what types of entertainment to offer, and chose her own stage persona, choreography, costumes, music, the customers for whom she will dance and most other aspects of her activities at the Clubs [SOF ¶¶ 11-14, 24, 30]; (2) Each Plaintiff controlled her own opportunities for profit and loss (*e.g.*, deciding how much to charge for entertainment; negotiating fees with customers, deciding how often, how long, and on what shifts to dance; deciding how many private dances to host, etc.) [SOF ¶¶ 23-25, 27, 28, 32, 33]; (3) there was no permanent relationship between Defendants and Plaintiffs (*e.g.*, Plaintiffs could come and go as they pleased and could even stop showing up to perform at the Clubs without notice and without repercussion) [SOF ¶¶ 9-10]; (4) Plaintiffs invested their own monies in the outfits

CASE NO. 15-62152-CIV-DIMITROULEAS

and accessories they needed to do their work [SOF ¶¶ 24, 38-40; and (5) Plaintiffs' services were not an integral part of the Clubs' business, which primarily earns revenue from the sale of food and drinks [SOF ¶¶ 4-5, Ricardo Dec., ¶ 4.[2]

As already discussed, if Plaintiffs were not employees of Defendants, then the requirements of the FLSA and FMLWA would be inapplicable.  *See Matson v. 7455, Inc.*, 2000 U.S. Dist. LEXIS 23013 (D. Or. Jan. 14, 2000) (finding summary judgment in favor of the defendants, reasoning that the plaintiff dancer was, *inter alia*, paid exclusively through fees and tips for table dances, income which was largely dependent on the plaintiff's own skill to attract customers and not on any salary or hourly wage set by the defendants); *Hilborn v. Prime Time Club, Inc.*, 2012 U.S. Dist. LEXIS 188881 (E.D. Ark. July 12, 2012) (granting the defendant summary judgment where the dancers: (1) exercised significant control over the manner in which their performances were conducted; (2) experienced certain risks of profit or loss beyond that which normal employees experience, (3) invested in equipment and materials attendant to their performances, (4) possessed and exhibited special skills with respect to activities at the nightclub albeit none of the skills exhibited required a certification, and (5) did not exhibit a degree of permanence representative of employer-employee relationships, instead enjoying the freedom to work for others).

1.      **Plaintiffs Had Significant Control Over The Manner In Which Their Work Was Performed**

To determine whether the nature and degree of control factor suggests an employer-employee relationship, particularly in the context of exotic dancers, courts in this circuit and others have looked to rules and regulations imposed on dancers regarding scheduling, performance style, behavior, appearance, and pricing, as well as the club's control over factors that might financially impact the dancers.  *See, e.g*. *Clincy v. Galardi S. Enters.., Inc.,* 2011 U.S. Dist. LEXIS 10040, *45 (N.D. Ga. Sept. 7, 2011); *Reich V. Circle C. Invs., Inc*., 998 F.2d 324 (5th Cir. 1993).  In *Matson, supra*, the court found that the exotic dancers/adult entertainers were not employees and were properly classified as independent contractors under the economic realities test where:

---

[2] In an action under the FLSA, a plaintiff bears the burden of showing by a preponderance of the evidence an employee/employer relationship under the FLSA. *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 66 S. Ct. 1187, 90 L. Ed. 1515 (1946); *Hasier v. OHC Envtl. Eng'g*, No. 8:07-cv-721-T-30EAJ, 2007 U.S. Dist. LEXIS 50859, at *4 (M.D. Fla. July 13, 2007)

CASE NO. 15-62152-CIV-DIMITROULEAS

a) the plaintiff entertainer paid a house fee to perform "[f]or use of building, stage, dressing room, bar, staff, facilities and access to defendants' clientele";

b) the club designated certain six-hour shifts for entertainers to perform;

c) the club set the price of dances;

d) the fees paid to entertainers in exchange for dances, along with tips paid in excess of the mandatory fees, were the "dancers' sole form of compensation;"

e) the court observed that the plaintiff earned an hourly compensation in the form of tips and dance fees, on average, "far beyond the required state and federal minimum wage;"

f) the plaintiff was subject to certain "'house rules' implemented by the defendants concerning the conduct expected of dancers at the club" including provisions imposed to avoid criminal liability.  These rules were enforced with warnings and, ultimately, fines;

g) the club fined entertainers for failing to notify the club that they would be late to their scheduled shift; and

h) if the plaintiff did not pay an outstanding fine, the club would not permit her to perform until the fine was paid.

*See Matson*, 2000 U.S. Dist. LEXIS 23013, *2, *4.  The district court in *Matson* held that "[a]n application of the [economic reality] factors. . . indisputably leads to the conclusion that the plaintiff was an independent contractor 'who [was], as a matter of economic fact, in business with [herself].'"  *Matson*, 2000 U.S. Dist. LEXIS 23013, *4.

Similarly, in *Hilborn*, another district court granted summary judgment in favor of the defendant, an adult entertainment club, holding that the exotic dancers/entertainers who performed there were independent contractors, and not employees covered by the FLSA.  *See Hilborn*, 2012 U.S. Dist. LEXIS 188881, *5.  The record evidence in *Hilborn* demonstrated that:

a. the entertainers' days and hours were set according to their availability, subject to the demands, availability, and capacity at the club;

b. the entertainers paid their own taxes, provided their own supplies and were responsible for their own expenses;

c. the entertainers were not limited in the total hours, days, and weeks that they performed at the club;

d. only one quarter of entertainers performed at the club for more than two years, one half performed for several months to less than a year and many took

significant breaks of time between the blocks of time that they performed at the club;

e.   the entertainers themselves determined for whom to dance;

f.   the entertainers were permitted to select their own dress and choreographed their own performances;

g.   the entertainers were responsible for their own customer development; and

h.   many of the entertainers performed at other clubs during the same period that they performed at the defendant club.

*Id.* at 3.  The court concluded that based upon the above evidence, the plaintiff entertainers "were not employees as defined by the FLSA."  *Id.* at *4.

The facts in the instant case demonstrate that the Plaintiffs are even <u>less</u> likely to be considered employees than the exotic dancers in *Matson* and *Hilborn*, as it is undisputed that Plaintiffs exerted significantly more control, if not complete control, over their performances/work at the Clubs than the dancers in *Matson* and *Hilborn*.  [SOF ¶¶ 11-14, 23-30]  Indeed, they showed up to perform when they wanted, they left when they wanted, they wore what they wanted, they charged what they wanted, they did whatever they wanted to do to make money while on the Clubs' premises (*e.g.*, table dances, stage dancers, private dances, talking to customers, or no dances at all), and they were not disciplined for inappropriate behavior or rule violations.  [SOF ¶¶ 11-13, 17-21, 23-25, 27-29, 31-32].  As Licensees, Defendants had very little to no control over any aspect of the Plaintiffs' "work" at the Clubs.

### a.   Plaintiffs Had Complete Control Over Their Schedules

Unlike employees whose work hours are placed on a schedule by an employer, the Plaintiffs here were not required to work on specific days or during specific hours.  [SOF ¶¶ 9-12] Indeed, Plaintiffs did not have to provide Defendants with any notice of what days or hours they would work, they arrived when they wanted, worked for however long they wanted, and left when they wanted.  [SOF ¶¶ 9-12]  Facts of this nature, such as the amount of flexibility an individual has in creating her work schedule, have been critical factors in other courts' analysis in determining the "degree of control" individuals have over their work (and, hence, whether an individual is an "employee").  *Cf. Taylor Blvd. Theatre, Inc. v. U.S.*, 1998 U.S. Dist. LEXIS 9355, *2 (W.D. Ky. May 13, 1998) (granting summary judgment to club regarding tax treatment

where dancers who signed lease agreements had complete control over their work schedule, only needing to notify club one week in advance of desired dancing days).

In the instant case, Plaintiffs <u>never</u> needed to provide advance notice to the Clubs of when they intended to perform. [SOF ¶¶ 9-12]. Plaintiffs simply showed up at whatever time they felt like performing, pursuant to their license Agreement. [SOF ¶¶ 9-12]. Plaintiffs did not have a schedule of when they were expected to arrive at the Clubs to perform, nor did they submit proposed schedules to the Clubs. [SOF ¶¶ 11-12]. Plaintiffs, like other independent contractors/licensees, worked at their own convenience, whenever they chose to work. *See Browning v. CEVA Freight, LLC*, 885 F. Supp. 2d 590, 600 (E.D.N.Y. 2012) (holding that the plaintiffs were independent contractors where they "could select their assignments based upon what time of day they chose to work and whether they thought it was worth the time or money.") The ability to determine when they would work, and for how long they would work, as well as to determine what type of work they would do and for which customers they would perform, gave Plaintiffs control over their opportunity for profit and loss, as it logically follows the more often they showed up to perform, the more money they would make. [SOF ¶¶ 9-12, 14, 30]

### b. <u>Plaintiffs Had Complete Control Over What They Did at Work</u>

Plaintiffs testified that they had complete control over what they did when at the Clubs. [SOF ¶¶ 13-14, 18, 23, 24, 30] They could decide whether they danced on stage, whether they danced on tables, whether they performed personal dances, whether they performed friction dances, whether performed for a particular customer, whether they performed nude, and whether they danced at all. [SOF ¶¶ 23, 24, 30]. "You can dance however you want," "It was up to me," "I decided what to do." <u>Id.</u>

The degree of control a club has over dancers' "job duties" and performance style factors heavily into the determination of the dancers' employment status. For example, the defendant club in *Clincy* provided detailed rules on when an entertainer could remove her clothing depending on what money was placed on stage. *Clincy*, 2011 U.S. Dist. LEXIS 100400, at *15 (finding dancers to be employees where club exerted significant control over dancers, including a requirement to retain clothing until a certain amount of money is received for each piece of clothing). Unlike the dancers in *Clincy*, however, as well as other cases where exotic

dancers were found to be employees, Plaintiffs in the instant case had complete creative control over their performances and appearance. [SOF ¶¶ 13, 14, 23, 30, 37-38, 40]. Plaintiffs wore whatever they chose to wear, including outfits that they wore when performing at other clubs. [SOF ¶ 37] Plaintiffs chose what songs they would dance to, how they would dance to them, whether they would dance on stage, whether they would dance on tables, whether they would entertain customers in the champagne room, among other choices. [SOF ¶¶ 29, 30]. Plaintiffs even had the choice of whether they would take off their clothes during their performances. [SOF ¶ 30]. Plaintiffs never performed any of the job duties performed by Defendants' employees, such as waitresses, bartenders, kitchen staff, cleaning staff, maintenance staff, and floor hosts. [SOF ¶ 15]. Plaintiffs also were not asked to execute restrictive covenants, like some of Defendants' employees, as Plaintiffs were free to work for any other establishment. [SOF ¶¶ 21-22].

The undisputed record evidence clearly demonstrates that Defendants did not impose *any* job duties on Plaintiffs, and Plaintiffs were free to do whatever lawful activities they pleased while performing at the Clubs. [SOF ¶ 12-14, 24-30, 37, 40]. The only limitations Defendants placed on Plaintiffs related to safety and compliance with the law, violations of which could lead to the revocation of Plaintiffs' licenses – not disciplinary action. [SOF ¶¶ 17-20].

### c. **Plaintiffs Had Complete Control Over Their Appearance**

Plaintiffs also had complete control over their physical appearance when performing at Defendants' Clubs. [SOF ¶¶ 29, 37-40]. Unlike in cases where exotic dancers were found to be employees, Plaintiffs in the instant case were not required to wear a uniform. [SOF ¶ 37]. They "could wear whatever they wanted" to wear. Id. Also unlike other cases brought by exotic dancers who were found to be employees, Plaintiffs in the instant case were not required to use the Clubs' House Moms or Make-Up artists before performing. [SOF ¶ 38]. Plaintiffs could do their own make-up or choose not to wear make-up. [SOF ¶ 40]. Plaintiffs control over their appearance directly correlated to their control over their potential for profit and loss (*i.e.*, if Plaintiffs chose to perform without make-up and wore a costume that covered most of their body, they likely would earn less than Entertainers who wore tiny costumes and flattering makeup – it was their choice).

### d.  Plaintiffs Had Complete Control Over Their Interactions With Customers

Courts also scrutinize the influence clubs exercise over the dancers' relationship with customers when evaluating the degree of control factor of the economic realities test.  In instances where courts found that dancers were employees, the clubs controlled with specificity how the dancers interacted with their customers and dance performances.  *See, e.g.*, *Clincy v. Galardi S. Enters.., Inc.,* 2011 U.S. Dist. LEXIS 10040, *50 (N.D. Ga. Sept. 7, 2011) (finding that the defendant club exercised a significant amount of control over the entertainers where the rules required dancers to work a scheduled shift and where the club set the cost of table-side and VIP dances).

Defendants, however, had no such requirements.  Plaintiffs were free to determine for which customers they would dance, what type of dances or forms of entertainment they would offer, for how long they would perform, and whether to dance at all.  [SOF ¶¶ 23, 30, 33].  In fact, Plaintiffs had their own customer base, performed their own marketing/client outreach to customers, and they had "regular" customers who specifically came to the Clubs just to see Plaintiffs perform.  [SOF ¶ 31].

### e.  Plaintiffs Had Significant Control Over Their Pricing and Rates

A significant distinction between Plaintiffs in the instant case and the exotic dancers found to be employees in other wage cases is that Plaintiffs in this matter had significant control over the pricing and rates they charged customers for the entertainment they provided at the Clubs.  [SOF ¶¶ 24-28, 33].  They had complete discretion to charge whatever rate they wanted to charge in the champagne room.  [SOF ¶ 26]. They had complete discretion to negotiate whatever rate they wanted to charge for friction dances, despite the Club having a suggested minimum of $25.  [SOF ¶ 27].  They could negotiate whatever rate they wanted to charge for table dances.  [SOF ¶ 28] Thus, Plaintiffs controlled their potential for profit and loss while working at the Clubs, and they had the opportunity to earn a rate well in excess of the minimum wage, notwithstanding the modest fees that they paid to Defendants in exchange for the license permitting them to use the Clubs' premises. *Cf. Déjà Vu Entertainment Enters. Of Minn., Inc. v. U.S.*, 1 F. Supp. 2d 964 (D. Minn. 1998) (finding that rental fee paid by lessee dancers not dispositive of employer-employee relationship for tax purposes).  The modest fees charged by Defendants were not a function of control but simple economy.  [SOF ¶ 5].  *Id.*  at 965-68

(finding that dancers were not employees despite the fact that managers kept track of the number of individual dances and calculated the rental fee based on that information).

**2.     There Was No Permanent Relationship Between Defendants and Plaintiffs**

The undisputed facts demonstrate there was no permanency in the relationship between Plaintiffs and Defendants which could even remotely resemble that of an employer-employee relationship.  [SOF ¶¶ 8-10].  In addition to the above cited evidence that Plaintiffs could come and go as they pleased, without having any type of work schedule and without having to provide the Clubs with any notice of their intent to work on a given night, Plaintiffs testified they worked for numerous competitor gentlemen's clubs during the same weeks they performed at Defendants' Clubs.  [SOF ¶¶ 21-22].  Employees, by contrast, generally are not permitted to work for their employers' competitors during the employment period.  Additionally, Plaintiffs testified if they wished to stop working at the Clubs, they simply stopped showing up for work without any notice.  [SOF ¶¶ 10-12].  If they wanted to return to perform at the Clubs months later, they simply showed up, again without notice.  [SOF ¶¶ 10, 12].  As long as the Plaintiffs' licenses had not been revoked for engaging in illegal activity at the Clubs, they were permitted to perform, no matter how much time had passed since they last appeared at the Clubs.  [SOF ¶¶ 9-12, ].  It is axiomatic that this type of flexibility and control does not lend itself to an employer-employee relationship, and courts routinely recognize the impermanence of exotic dancers' relationships with the clubs where they perform.  *See, e.g., Circle C.*, 998 F.2d at 328-29 ("exotic dancers tend to be itinerant…"); *Clincy*, 2011 U.S. Dist. LEXIS 100440, at *61 (same).

**3.     Plaintiffs Controlled Their Own Opportunities for Profit and Loss**

Plaintiffs' significant degree of control over their opportunity for profit or loss clearly demonstrates they cannot be classified as "employees."  Unlike employees, independent contractors/licensees have a greater opportunity for profit or loss because they can increase or decrease their earning potential by manipulating factors which are not in a normal employees' control (*e.g.* when and how often to show up to work and what activities to perform while at work).  Thus, in determining whether an individual is properly classified as an independent contractor or licensee, courts analyze which party controlled the major determinants of the individual's ability to make a profit.  *See Herman v. Express Sixty-Minutes Delivery Srvs., Inc.,*

161 F.3d 299, 328 (5th Cir. 1998) (noting that the plaintiff delivery drivers controlled the customer volume and amount charged to customers, having the ability to choose how much they wanted to work and knowing which jobs were most profitable); *see also Freund*, 185 Fed. Appx. at 782.

Similarly, **Plaintiffs in the instant case had the complete discretion and control to determine when they would show up to work, how often they would show up to work, how long they would stay to perform at the Clubs, which customers they would entertain, and what type of entertainment to offer to customers (*e.g.*, table dances or more lucrative private dances in the champagne room; to dance fully nude (which would be more profitable) or to remain clothed)**.   [SOF ¶¶ 11-14, 23-30].  This degree of control is atypical of an employer-employee relationship.  *Freund*, 185 Fed. Appx. at 782.  Indeed, if all employers permitted their employees to show up to work whenever they chose to, and to perform whatever duties the employees want to perform while on the job, complete chaos would exist in the business world.

Also unlike a typical employer-employee relationship, Plaintiffs were not paid by the Clubs.  [SOF ¶¶ 32, 33-36]  Plaintiffs were paid directly from their customers. [SOF ¶ 32]  Indeed, Defendants did not even collect Plaintiffs' dance fees or tips from customers on Plaintiffs' behalf, nor did Defendants ever charge customers fees for Plaintiffs' services.  [SOF ¶ 35].  Consequently, Defendants did not provide Plaintiffs with an IRS Form W-2 or 1099, and Plaintiffs reported their own income to the IRS.   [SOF ¶ 36].    *Cf. Deboissiere v. Am. Modification Agency*, 2010 U.S. Dist. LEXIS 113776, at *8-9 (E.D.N.Y. Oct. 22, 2010) (noting that "if a plaintiff signs a tax return 'under  penalty of perjury' that declares independent contractor status. . . such a tax return may significantly impede the plaintiff's ability to claim employee status for purposes of filing an overtime or minimum wage claim.'") (quotation omitted).

Finally, Plaintiffs' performances necessarily included the skill of exotic dancing. Plaintiffs received absolutely <u>no</u> training from Defendants Clubs. [SOF ¶ 16] In order to make money at the Clubs, they had to rely on their own skill set and ability to generate income.  [SOF ¶ 14]  In enforcing the First Amendment rights of exotic dancers, courts have noted the level of skill, creativity and artistic ability necessary to perform the art of exotic dancing.  *See Schultz v. City of Cumberland*, 228 F.3d 831, 839 (7th Cir. 2000). Plaintiffs in the instant case testified that

they used their skills that they brought to the Clubs to craft their performances and themes to generate and increase their ability to earn profit at the Clubs.  [SOF ¶¶ 14, 23, 24, 29, 30, 31, 37]

4.      **Plaintiffs Invested in The Outfits and Accessories They Needed to do Their Work**

Another key factor courts consider in analyzing the economic realities test is whether the individual invested in the tools and materials needed to perform their work.  *See, e.g., Hilborn*, 2012 U.S. Dist. LEXIS 188881, *2.   In the instant case, Plaintiffs spent their own money to invest in the outfits and accessories they needed to perform their work at the Clubs.  [SOF ¶¶ 37-40].    Plaintiffs purchased the costumes that they chose to wear, as well as their make-up and shoes. [SOF ¶ 39].    Employees, by contrast, generally do not invest their own monies into their employers' businesses to generate profit for their employers.  By providing for themselves the tools and accessories necessary to perform their work at the Clubs, Plaintiffs demonstrate that they have far more control over their opportunity for profit and loss than employees, and they properly were classified as licensees and not employees.  *See Hilborn*, 2012 U.S. Dist. LEXIS 188881, *2 (finding that dancers "invested in equipment and materials attendant to their performances" and, therefore, were not employees).

5.      **Plaintiffs' Services Were Not an Integral Part of the Clubs' Business**

Although Entertainers are a feature part of Defendants' business, they are not integral to the Clubs.   [SOF ¶¶ 3-4].   Defendants' Clubs' primary revenue comes from the sale of food and liquor.   [SOF ¶¶ 3-5; Rodriguez Dec., ¶ 4].   The fees paid to Defendants by Entertainers represent less than 10% of Defendants overall revenue. [Rodriguez Dec., ¶ 6]   In some instances, Entertainers pay a $5.00 fee to the Clubs when they perform a friction dance (in other instances they do not pay any friction dance fees) and, depending on how often they showed up to perform, they also may have been required to pay a house fee, generally between $15-$20.  [SOF ¶ 5; Rodriguez Dec., ¶ 5].

Entertainers, moreover, are not the sole attraction at the Clubs, as the Clubs also offer customers access to premium sporting events and music from live DJs in order to encourage customers to visit the Clubs and purchase food and liquor.  [SOF ¶ 4].  The Clubs subscribe to "[t]he NFL package, the MBA All Access, the hockey, whatever kind of sporting

14

even that we could get, we buy . . . UFC boxing, everything," which is used to market the Clubs to customers.  [SOF ¶¶ 3-4].

In sum, the undisputed record evidence clearly demonstrates that Plaintiffs cannot establish they had an employer-employee relationship with Defendants.  Plaintiffs have admitted that they entered into written Dancer Licensing Agreements with Defendants through which Defendants granted them a license to utilize the Clubs' premises to perform their work, through which they retained their fees and tips that Plaintiffs generated, in exchange for a modest fee. Plaintiffs have admitted they did not have a work schedule, they had no set job duties, they had complete control over the type of entertainment/work they offered at the Clubs, they set their own rates, negotiated their own fees, developed their own customers, simultaneously worked at competitor clubs, and they came and left when they wanted.  Plaintiffs had complete control over their opportunities for profit, and loss and they invested their own monies into their work, all of which indicate there was no employer-employee relationship; rather, Plaintiffs were in business for themselves.  These factors have led other courts to conclude that the exotic dancers are not employees under the economic realities test, and the Court should so find here, for all of the above reasons.  *See Hilborn*, 2012 U.S. Dist. LEXIS 188881, *5; *Matson*, 2000 U.S. Dist. LEXIS 23013, *6.  Accordingly, summary judgment in favor of Defendants as to all counts in Plaintiffs' Amended Complaint is appropriate and warranted as a matter of law.

<u>POINT II</u>

**PLAINTIFFS' HAVE ADMITTED THEY NEVER WORKED 40 OR MORE HOURS AT DEFENDANTS' CLUBS AND THEIR <u>OVERTIME CLAIMS THEREFORE FAIL AS A MATTER OF LAW</u>**

Even if this Court finds that Plaintiffs should have been classified as employees, Count I of the Amended Complaint still must be dismissed, with prejudice.  In Count I of their Amended Complaint, Plaintiffs seek to recover unpaid overtime wages.  [D.E. 20].  Specifically, Plaintiffs allege that they worked more than 40 hours per workweek at Defendants' Clubs and are owed overtime pay at the rate of 1.5 times the minimum wage rate for every such hour worked.  <u>Id</u>.   During their depositions, however, each of the three named Plaintiffs testified that she never worked anywhere near 40 hours during any week in which she performed at Defendants' Clubs.  [SOF ¶ 41].  Not only do Plaintiffs admit they never worked overtime hours during their depositions, the attorney demand letters attached as Exhibit "A" to the Amended

Complaint demonstrate Plaintiffs never worked overtime hours at Defendants' Clubs.  [D.E. 20-6].  Plaintiffs' sworn, written discovery responses, moreover, also acknowledge that they never worked overtime hours during any week in which they performed at Defendants' Clubs.  [Rog. 5; Exh. G, H, and I attached to Notice of Filing in Support of Statement of Undisputed Facts]

Because Plaintiffs' have admitted throughout this litigation that they never worked 40 or more hours during any work week in which they performed at Defendants' Clubs, summary judgment in Defendant's favor as to Count I of the Amended Complaint should be granted as a matter of law.  Defendants, moreover, should be awarded recovery of the costs they incurred in defending against Plaintiffs' overtime claims, as Plaintiffs knew from the outset of this lawsuit that their overtime claims were made without merit.  [SOF ¶¶ 41-42 and D.E. 20-6].

## POINT III

### PLAINTIFFS WAGE CLAIMS SHOULD BE OFFSET BY PLAINTIFFS' LIABILITY TO DEFENDANTS FOR BREACH OF CONTRACT OR UNJUST ENRICHMENT

It is undisputed that Plaintiffs entered into Dancer License Agreements with Defendants to enable them to utilize the Clubs' premises for their performances in exchange for modest fees as consideration.  [SOF ¶ 7].  It also is undisputed that Defendants abided by the terms of the Agreements by permitting Plaintiffs to perform in their Clubs, whenever they wished to do so, giving Plaintiffs important controls over their performances that Defendants would have reserved for themselves if Plaintiffs had been employees (setting their own schedules, selecting costumes of their choice, selecting patrons for whom they would perform, setting their own rates, avoiding duties other than dancing) and allowing Plaintiffs to retain their fees and full tips earned from customers.  [SOF ¶¶ 7, 11-12, 24-28, 32-36].  Plaintiffs' attempt to repudiate their Agreements by retaining all fees and tips they were paid, while simultaneously seeking to obtain additional compensation in the form of wages, violates their Agreements.  Had the Plaintiffs been employees, the fees paid to them by customers would have belonged to Defendants, and could thus be offset against Defendants' alleged minimum wage obligations. Because Plaintiffs, now seek to (a) repudiate the Parties' Agreements; (b) retain all monies which constitute dance fees; (c) have Defendants return to them the rents/modest fees paid in exchange for the license; and (d) have Defendants pay them an hourly wage in addition to the substantial dance fees they retained under the terms of the Agreements, Defendant Faneuil (the

only party with which Plaintiffs entered into the Agreements) filed a Counterclaim in this action asserting claims for breach of agreement and, alternatively, unjust enrichment against Plaintiffs.

Summary judgment is appropriate as to Defendant's breach of contract claim, as Faneuil has demonstrated that there was: 1) an offer, 2) acceptance, 3) consideration, and 4) sufficient specification of the essential terms of the Agreements. *See Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009). The undisputed record evidence demonstrates Plaintiffs signed the Dancer License Agreements, and received the benefit of their licenses to utilize the Clubs' premises to perform and earn money from customers, in exchange for modest fees as consideration. [SOF ¶ 7 (Agreement at ¶ 8)]. The essential terms of the Agreements are spelled out in clear, unambiguous language. *Id.* Plaintiffs now ask this Court to reclassify them as employees, contrary to their Agreements. Specifically, Plaintiffs seek to repudiate their classification as Licensees and further seek to retain all monies received in the form of dance fees and tips, as well as recovery of additional monies in the form of an hourly wage. [DE 20, p. 23, ¶ ¶ (h)-(k)]. Defendants, however, have abided by the terms of the Agreements.

Defendants are not attempting to demonstrate entitlement to a reduced minimum wage by arguing that Plaintiffs were tipped employees. Instead, they are asserting a claim for breach of contract because of Plaintiffs' retention of dance fees, should they be deemed employees. *See Doe v. Cin-Lan, Inc*., 2010 U.S. Dist. LEXIS 16447, *20-21 (E.D. Mich. Feb. 24, 2010) (denying motion to dismiss counterclaim of breach of contract against dancers where contract specifically called for return of fees in event of breach). Although Plaintiffs agreements do not contain a provision for a return of the fees, they do specifically state no employment relationship is created between the parties. Because Plaintiffs are seeking to be designated as employees in order to be entitled to a minimum wage, Plaintiffs will have violated the agreements in the event Plaintiffs prevail on their FLSA claim.

Alternatively, Defendants have established their claim for Unjust Enrichment by demonstrating that: (1) a benefit was conferred upon Plaintiffs by Defendants, (2) Plaintiffs' appreciated the benefit, and (3) Plaintiffs accepted and retained the benefit under circumstances that make it inequitable for them to retain it without paying the value thereof. *See Rollins, Inc. v. Butland*, 951 So. 2d 860, 876 (Fla. 2d DCA 2006). Plaintiffs admittedly performed in Defendants' Clubs and retained the fees and tips paid to them by customers. Should Defendants not be entitled to recovery under a theory of breach of contract, it would be inequitable to allow

Plaintiffs to have utilized Defendants' premises for their performances and to retain the dance fees paid to Plaintiffs by customers, and then require Defendants to additionally pay to Plaintiffs the minimum wage for each hour worked, without deducting the substantial sums already paid to Plaintiffs as a setoff.  *See Doe v. Cin-Lan, Inc*., 2010 U.S. Dist. LEXIS 16447, *22-23.

The statutory framework of the FLSA supports such a setoff.  The regulations allow fees or service charges (not tips) received by employees to be applied against minimum wage obligations.  *See* 29 C.F. R. § 531.55 (where service charges such as performance fees "are distributed by the employer to its employees . . . they may be used in their entirety to satisfy the monetary requirements of the [FLSA]").  A fixed fee collected by Plaintiffs in exchange for entertainment would not constitute a "tip" under federal regulations, regardless of the nomenclature used for such a fee.  For example, 29 C.F. R. § 531.55 states that:

> A compulsory charge for service, such as 10 percent of the amount of the bill, imposed on a customer by an employer's establishment, is not a tip and, even if distributed by the employer to his employees, cannot be counter as a tip received in applying the provisions of section 3(m) and 3(t).

On the other hand, the regulations define a "tip" as follows:

> A tip is a sum presented by a customer as a gift or gratuity in recognition of some service performed for him.  It is distinguished from payment or a charge, if any, made for the service.  Whether a tip is to be given, and its amount, are matters determined solely by the customer, and generally he has the right to determine who shall be the recipient of his gratuity.

29 C.F. R. § 531.52. "No limitation in the F.L.S.A. statute exists precluding the use of such fixed fees in the calculation of an employee's minimum wage."  *Matson*, 2000 U.S. Dist. LEXIS 23013, *6.

In *Matson*, although the court found the plaintiff to be an independent contractor, the court noted that had she been reclassified as an employee, the fees collected by the plaintiff for certain performances were not tips, but were service charges that should be used to offset any payment obligations by the defendants.  *Matson*, 2000 U.S. Dist. LEXIS 23013, *6 ("These [regulatory] definitions make it abundantly clear that the fixed fees collected by the plaintiff in exchange for table dances are not 'tips.' No limitation in the FLSA statute exists precluding the use of such fixed fees in the calculation of an employee's minimum wage."); *see also Geter v.*

CASE NO. 15-62152-CIV-DIMITROULEAS

*Galardi S. Enterprises, Inc.*, 43 F. Supp. 3d 1322, 1327-28 (S.D. Fla. 2014) (denying motion to dismiss counterclaims for unjust enrichment and breach of contract arguing that service charges by plaintiff dancers could be used to offset liability for minimum wages, noting that such an offset would not take the plaintiffs below minimum wage); *Doe*, 2010 U.S. Dist. LEXIS 16447, *15.

Thus, whether under a theory of breach of contract or unjust enrichment, the FLSA permits Defendants to offset minimum wage liability by the fees (which would be deemed service charges) retained by Plaintiffs as a result of their performing at the Clubs, and summary judgment as to one of these alternative theories is just and appropriate under the circumstances.

## **CONCLUSION**

WHEREFORE, for all of the foregoing reasons, Defendants respectfully request that the Court enter an order granting summary judgment dismissing the Amended Complaint in its entirety, in addition to awarding such other and further relief as the Court deems just and proper.

Dated:  December 28, 2016
     Miami, Florida

Respectfully submitted,

By: s/Jennifer A. Schwartz
Jennifer A. Schwartz, Esq.
Florida Bar No. 502431
E-mail: *jennifer.schwartz@jacksonlewis.com*
David M. Gobeo, Esq.
Florida Bar No. 16565
E-mail: *David.Gobeo@jacksonlewis.com*
JACKSON LEWIS PC
One Biscayne Tower
2 South Biscayne Boulevard - Suite 3500
Miami, Florida  33131
Telephone: (305) 577-7600
Facsimile: (305) 373-4466
Counsel for Defendants

CASE NO. 15-62152-CIV-DIMITROULEAS

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 28, 2016, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List via transmission of Notices of Electronic Filing generated by CM/ECF.

s/David M. Gobeo
David M. Gobeo, Esq.

## SERVICE LIST

Jack Morgan, Esq.
Florida Bar No. 126527
Scott J. Hertz, Esq.
Florida Bar No. 98552
2320 First Street, Suite 1000
Fort Myers, Florida 33901
Telephone: 239-338-4218
Facsimile: 239-337-3850
E-mail:
jmorgan@ralaw.com
serve.jmorgan@ralaw.com
shertz@ralaw.com
serve.shertz@ralaw.com

John B. Gallagher, Esq.
Florida Bar No. 271225
E-mail: gal2701@aol.com
2631 East Oakland Park Boulevard, Suite 201
Fort Lauderdale, Florida 33306
Telephone: 954-524-1888
Facsimile: 954-524-1887

ATTORNEYS FOR PLAINTIFFS

Served via transmission of Notices of Electronic Filing generated by CM/ECF

Jennifer A. Schwartz, Esq.
Florida Bar No. 502431
E-mail: Jennifer.schwartz@jacksonlewis.com
David M. Gobeo, Esq.
Florida Bar No. 16565
E-mail: David.Gobeo@jacksonlewis.com
JACKSON LEWIS PC
One Biscayne Tower
2 South Biscayne Boulevard - Suite 3500
Miami, Florida 33131
Telephone: (305) 577-7600
Facsimile: (305) 373-4466

ATTORNEYS FOR DEFENDANTS

Served via transmission of Notices of Electronic Filing generated by CM/ECF