# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

|  |  |  |
|---|---|---|
| **SARAH SHAW, REBECCA WILES, JENNIFER SCOTT, and ASHLEY HOWELL, Individually, and on Behalf of All Others Similarly Situated,** | § § § § § § | |
| **Plaintiff,** | § § | **CIVIL ACTION NO. 15-62152-CIV** **JURY TRIAL DEMANDED** |
| **v.** | § § | |
| **THE SET ENTERPRISES, INC., a Florida corporation and JOE RODRIGUEZ, individually,** | § § § § | |
| **Defendants.** | § § § § § § § § § § | |

---

## PLAINTIFF'S AMENDED MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiffs, **SARAH SHAW, REBECCA WILES,** and **ASHLEY HOWELL**, individually, and on behalf of all others similarly situated, by and through their undersigned counsel pursuant to Fed. R. Civ. P. 56 and Rules 7.1(c) and 56.1 of the Local Rules of the Southern District of Florida, in compliance with this Court's Order (Doc. 166) files this Amended Memorandum in Opposition to Defendants' Motion for Summary Judgment (Doc. 150), and in support thereof states:

### I.   Introduction

1.      The primary legal dispute between the parties is whether Plaintiffs and the putative class members qualify as employees entitled to minimum wage compensation under Article X, Section 24 of the Florida Constitution and the Fair Labor Standards Act ("FLSA"). Defendants operate two strip clubs both doing business as  the "Cheetah," with one being located in Hallandale and  the other in Pompano Beach, Florida (herein after the "Clubs") where Plaintiffs and others worked as dancer/entertainers. (Doc. 20; Doc. 149, ¶ 1, 2, 6; Doc. 168, ¶ 6 ). The Clubs classify the dancers as "licensees" (Doc. 150, p. 2, Doc. 149 ¶ 7) and do not pay them *any* wages (Doc. 149, ¶ 7; Doc. 168, ¶ 7).  Instead, the Defendants require entertainers to pay "house fees" to the Clubs and tip outs to the Defendants' other employees and contractors. (*Id.*). Plaintiffs and putative class members, however, were and are employees within the meaning of the FLSA, the Florida Constitution, and their applicable regulations, and are entitled to recover unpaid minimum wages. (Doc. 20).

2.      Both Clubs, at all material times, are and were enterprises with annual gross sales of $500,000 or more, (Doc. 168, ¶ 45) and are, accordingly, obligated to comply with the FLSA (*See* 29 U.S.C. § 203(s)(1)(A)(i) and (ii)). Moreover, Plaintiffs do not fall within an exemption for the minimum wage requirements of the FLSA. (Doc. 168, ¶ 47).

3.      29 U.S.C. § 201, *et seq*. is explicitly incorporated by the Florida Constitution, and requires employers to compensate employees with a minimum wage for each hour they work "free and clear" of deductions or kickbacks.  29 U.S.C. § 206; 29 C.F.R. § 531.35; *Reich v. Priba Corp.*, 890 F. Supp. 586, 595 (N.D. Tex. 1995); *See also Vaughan et. al. v. M-ENTERTAINMENT Properties, LLC. et. al*., Case No. 1;14-cv-914 (N.D. Ga. 2016) (*slip op. dated 12/22/16* attached hereto as Exhibit 1).

4.      To avoid the ramifications of enforced FLSA coverage for the dancers working at

their Clubs, Defendants have filed their Motion for Summary Judgment arguing that: (a) because of "unique, undisputed facts"[1] the dancers were not "employees" under the FLSA; (b) there are no overtime claims by the named Plaintiffs; and (c) the wage claims should be offset by Defendants' breach of contract and unjust enrichment counterclaims. As set forth in detail hereafter, the controlling case law, and, a fair review of the testimony by the Plaintiffs and Defendants' corporate representative, make clear Defendants Motion must be denied.

## II.  Standard of Review

5.     The Eleventh Circuit has opined that "[s]ummary judgment is such a lethal weapon, depriving a litigant of a trial on the issue, caution must be used to ensure only those cases devoid of any need for factual determinations are disposed of by summary judgment." *Tippens v. Celotex Corp.,* 805 F.2d 949, 952-53 (11th Cir. 1986).

6.     The recent case of *Furcron v. Mail Centers Plus, LLC,* _____ F.3d _____, 2016 WL 7321211 at p. 9  (11th Cir. 2016) succinctly sets forth the standard to be applied as follows:

> A grant of summary judgment will be affirmed if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact." *FindWhat Inv'r Grp. v. FindWhat.com,* 658 F.3d 1282, 1307 (11th Cir. 2011) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). A "material" fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*
>
> The Federal Rules of Civil Procedure require "the court ... examine any pleadings, depositions, answers to interrogatories, admissions, and affidavits in a light that is most favorable to the non-moving party." *Hilburn v. Murata Elec. N. Am., Inc.*, 181

---

[1]  Plaintiffs challenge many of the material facts called "undisputed" by the Defendants. Simultaneously, Plaintiffs file and rely upon, Plaintiffs' Amended Statement of Material Facts Presented in Opposition to Defendants' Motion for Summary Judgment.  These documents set forth that the disputes concerning material facts in this case alone are sufficient cause to deny Defendants' Motion.

F.3d 1220, 1225 (11th Cir. 1999) (citing Fed. R. Civ. P. 56(c)). Put differently, we must "view all of the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Findwhat*, 658 F.3d at 1307. Thus, the Court "may not weigh conflicting evidence or make credibility determinations of its own." *Id.*

### III.   Under Applicable Law, the Entertainer/Dancers are Employees of the Cheetah, Covered by the FLSA, and Entitled to a Minimum Wage

#### a.   The Case Law

7.      In support of their Motion for Summary Judgment, Defendants cite two federal district court opinions, one over 15 years old from Oregon, and, the other from Arkansas, finding dancers were independent contractors. (Doc. 150, pg. 6-8).

8.      Contrawise, because Plaintiffs and dancers for Cheetah are subjected to the Clubs' direction and control, they are actually employees covered by the FLSA.

9.      Plaintiffs' position is not novel; the vast majority of courts to have considered this issue have found exotic dancer/entertainers to be employees as a matter of law.  *See, e.g.*, *McFeeley et al v. Jackson Street Entertainment, LLC et al*, 825 F.3d 235 (4th Cir. 2016)*; Harrell v. Diamond A Entm't, Inc.*, 992 F. Supp. 1343 (M.D. Fla. 1997); *see also Reich v. Circle C. Invest., Inc.*, 998 F.2d 324 (5th Cir. 1993); *Vaughan v. M-Entm't Props., LLC.*, Order Doc. 190, Case No.:14-CV-914-SCJ, (N.D. Ga. Mar. 15, 2016); *Foster v. Gold & Silver Private Club, Inc.*, 2015 WL 8489998 (W.D. Va. Dec. 9, 2015); *Degidio v. Crazy Horse Saloon & Rest., Inc.*, 2015 WL 5834280 (D. S.C. Sept. 30, 2015); *Mason v. Fantasy, LLC*, 2015 WL 4512327 (D. Colo. July 27, 2015); *Berry v. Great Am. Dream, Inc.*, 2014 WL 5822691 (N.D. Ga. Nov. 10, 2014); *McFeeley v. Jackson St. Entm't, LLC*, 47 F. Supp. 3d 260 (D. Md. 2014); *Verma v. 3001 Castor, Inc.*, 2014 WL 2957453 (E.D. Pa. June 30, 2014); *Stevenson v. Great Am. Dream*, 2013 WL 6880921 (N.D. Ga. Dec. 31, 2013); *Collins v. Barney's Barn, Inc.*, 4:12CV00685 SWW, 2013 WL 11457080, at *1 (E.D. Ark. Nov. 14, 2013); *Butler v. PP&G, Inc.*, 2013 WL 5964476 (D.

Md. Nov. 7, 2013); *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901 (S.D.N.Y. 2013); *Thornton v. Crazy Horse, Inc.*, 2012 WL 2175753 (D. Alaska June 14, 2012); *Clincy v. Galardi S. Enters., Inc.,* 808 F. Supp. 2d 1326 (N.D. Ga. 2011); *Thompson v. Linda and A., Inc.*, 779 F. Supp. 2d 139 (D. D.C. 2011); *Morse v. Mer Corp.*, 2010 WL 2346334 (S.D. Ind. June 4, 2010); *Reich v. Priba Corp.*, 890 F. Supp. 586 (N.D. Tex. 1995); *Martin v. Priba Corp.*, 1992 WL 486911 (N.D. Tex. Nov. 6, 1992); *Martin v. Circle C Invest., Inc.*, 1991 WL 338239 (W.D. Tex. Mar. 27, 1991); *Donovan v. Tavern Talent & Placements, Inc.*, 1986 WL 32746 (D. Colo. Jan 8, 1986); *Jeffcoat v. Alaska Dep't of Labor*, 732 P.2d 1073 (Alaska 1987); *Milano's Inc. v. Kan. Dep't of Labor*, 231 P.3d 1072 (Ct. App. Kan. 2010); *Jenks v. D.&B. Corp.*, 28 Mass. L. Rptr. 579 (Super. Ct., 2011); *Monteiro v. PJD Ent. of Worcester, Inc.*, 29 Mass. L. Rptr. 203 (Super. Ct., 2011); *Chaves v. RGIS Inventory Specialist*, 2009 WL 3188948 (Super. Ct. Mass., July 30, 2009); *Smith v. Tyad*, 209 P.3d 228 (Mont. 2009); *Terry v. Sapphire Gentlemen's Club*, 336 P.3d 951 (Nev. 2014) (adopting economic realities test); *Club Paradise, Inc. v. Okla. Emp't Sec. Com'n*, 213 P.3d 1157 (Ct. Civ. App. Okla. 2008); *Oregon v. Bomareto Ent., Inc.*, 956 P.2d 254 (Ore. Ct. of App. 1998); *Yard Bird, Inc. v. Va. Emp't Com'n*, 503 SE.2d 246 (Ct. App. Va. 1998).

10.     The case herein dictates the same result.

**b.     <u>Economic Reality Test</u>**

11.     Whether a worker is a contractor or employee depends on whether she is in business for herself. This is primarily a question of the amount of control placed on the putative employee by her employer. The inquiry focuses on the "economic reality" of the business relationship between the putative employee and employer. *See*, *e.g*., *McFeeley et al v. Jackson*

*Street Entertainment, LLC et al,* 825 F.3d 235, at 241 (4th Cir. 2016). The courts look at six factors:

> (1) The degree of control that the putative employer has over the manner in which the work is performed;
>
> (2) The workers opportunities for profit or loss dependent on [her] managerial skill;
>
> (3) The worker's investment in equipment or material, or [her] employment of other workers;
>
> (4) The degree of skill required for the work;
>
> (5) The permanence of the working relationship; and
>
> (6) The degree to which the services rendered are an integral part of the putative employee's business.

*Id.* at 6 (applying this test to exotic dancers and finding them employees of the club).

12.     "No one factor is determinative, and each factor should be given weight according to how much light it sheds on the nature of the economic dependence of the putative employee on the employer." *Clincy, supra,* 808 F. Supp. 2d at 1343 (citing cases). It is the totality of the circumstances that must be measured. *Id.*

13.     Further, it is generally agreed "…the court must adapt its analysis to the particular working relationship, the particular workplace, and the particular industry in each FLSA case." (emphasis added). *McFeeley, supra,* at p. 241.

14.     Finally, employment status is a matter of economic reality that cannot be waived by contract. *See Scantland v. Jeffry Knight, Inc.*, 721 F. 3d 1308, 1311–12 (11th Cir. 2013); s*ee also McFeeley, supra,* at p. 239 (where the court found dancers to be employees pursuant to the economic realities test despite execution of a "Space/Lease Rental Agreement of Business Space" which explicitly categorized dancers as independent contractors).

### c.  <u>Degree of Control by Cheetah Over the Dancers</u>

15.     The Defendants' corporate representative admitted they exercised control over many aspects of entertainers' work, such as hiring and firing, tracking of schedules, mandating a certain appearance, Entertainer Rules "regulating the personal conduct of dancers", and mandatory tip-out tracking procedures. (Doc. 168 ¶ 7, 9, 12, 13, 14, and 18).  For example, the Club hires all dancers and retains the ability to discipline, fine, and terminate dancers at their discretion. (Doc. 168 ¶ 17, 18, 23). The Club enforces control by having dancers report to the managers like all other employees. (*Id.*). As well, like other employees, dancers are required to sign in and out by registering the exact time they arrive to and leave work. (Doc. 168 ¶ 9, 12, 13, 17, 18, 23). This level of control is indicative of an employer/employee relationship.

16.     The Clubs establish written workplace rules for dancers to follow and require dancers to agree to comply with the rules when they are hired. (Doc. 168 ¶ 9, 17, 18, 73). Dancers are required to comply with the rules or risk termination. (*Id.*). The written rules are also posted in the Clubs. (Doc. 168 ¶ 83, 87). Along with the written rules, managers have, from time to time, implemented verbal rules with which the dancers must comply. (Doc. 168 ¶ 80, 81). The Clubs require dancers to pay house fees and tip-outs to other club employees/contractors. (Doc. 168 ¶ 7, 18, 57, 58, 59). The Clubs also give the dancers schedules and behavioral codes by which they must abide. (Doc. 168 ¶ 9, 13, 17, 51, 57).  Defendants set the club's hours and shift times, and if a dancer is late, she is fined. (Doc. 168 ¶ 7, 9, 59, 73). If a dancer leaves early they are fined for leaving early. (Doc. 168 ¶ 9, 76).  The Club sets house fees based on the times entertainers arrive to work. (Doc. 168 ¶ 7, 9, 18, 59, 73).  The Club penalizes dancers who arrive late by assessing higher house fees in an effort to cause entertainers to arrive earlier to work.

(*Id.*).  Once at the Club, entertainers must sign in (Doc. 168 ¶ 68) and work until the end of the shift. (Doc. 168 ¶ 9, 13, 76).

17.     Other rules set by the Club include but are not limited to 1) requiring dancers to maintain a certain appearance (Doc. 168 ¶ 64); 2) prohibiting dancers from chewing gum on stage (Doc. 168 ¶ 9, 13, 18); 3) prohibiting dancers from smoking while on the floor (*Id.*); 4) prohibiting  spouses, boyfriends or significant others in the Clubs (*Id.*); 5) dancers may not leave any stage till their replacement has arrived (Doc. 168 ¶ 81); 6) dancers must pay their house fees before leaving the club (Doc. 168 ¶ 68, 69); 7) dancers must pay their tip outs before leaving the club (Doc. 168 ¶ 66, 67); 8) dancers must participate in the Clubs' sale of promotional items during 'up-times' (Doc. 168 ¶ 88); 9) dancers must participate in the stage rotation (Doc. 168 ¶ 13, 18).; 10) dancers must wear cocktail dresses (Doc. 168 ¶ 78), g-strings and heels (*Id.*); and 11) dancers must charge $10 for a table dance and $25 for a friction dance of which they must remit $5 to the Clubs. (Doc. 168 ¶ 23, 28, 71).

18.     It has been determined such rules, whether written or unwritten, indicate control by the employer and indisputably weigh in favor of employee status.  *See Verma v. 3001 Castor, Inc.*, *supra,* 2014 WL 2957453 at *6; *see also Stevenson*, *supra,* 2013 WL 6880921, at *4 (finding significant control where club maintained standards of appropriate dress, selected music, and disseminated rules about entertainer conduct); *Hart, supra,* 967 F. Supp. 2d at 913–16 ("On their face, the Club's Guidelines reflect the exercise of tight control, indeed, control fairly described as micromanagement, by Rick's NY over the dancers."); *Martin*, 1991 WL 338239, at *4 ("The dancers could express a preference for a certain type of music, but . . . did not have the final say . . . as they would if they were independent contractors . . .").

19.     The Defendants retain fine, discipline, and/or terminate dancers who violate the rules at their discretion (Doc. 168 ¶ 13, 17). This exercise of discipline over dancers illustrates control. *Clincy, supra,* 808 F. Supp. 2d at 1344–45 ("[T]he Club's management has the authority to fine or otherwise discipline entertainers for not complying with the rules, and has done so."); *Martin, supra,* 1991 WL 338239, at *3 ("Numerous rules were promulgated . . . and offenders were fined for infringements.").

20.     In sum, Defendants exercise tight control over the dancers and there is no credible argument that the entertainers were truly in business for themselves. *See Harrell, supra,* 992 F. Supp. at 1349–50.

21.     Notably, Defendants have stated unabashedly that "Unlike exotic dancers in other wage cases, Plaintiffs in the instant case were not disciplined for failing to perform certain 'duties' or violation any rules." (Doc. 150, pg. 3). This statement is directly contradicted by testimony from the Defendants corporate representative who specifically confirmed floor managers are responsible for enforcing the rules, specifically stated that dancers who violate the rules are asked not to come back, and specifically stated, that other than their rule about chewing gum, the rules are still being enforced at the present time. (Doc. 168 ¶ 13, 17, 85). Such statement is also directly contradicted by the Defendants' Licensing Agreement, which attaches the Entertainer Rules and Tip Out Sheet, and at Sections 6 and 7 require that the dancers comply with the rule and tip out schedules or face termination and/or fines. (Doc. 168 ¶ 7, 13, 17, 18). Nonetheless, such dueling depictions of the extent of control are not infrequent in exotic dancer cases.[2] *See McFeeley, supra,* at p. 241-242.

---

[2] Although Defendants claim not to enforce the rules, courts have generally ruled "an employers' 'potential power' to enforce its rules and manage dancers conduct is a form of control." *Hart v. Rick' Cabaret Int'l Inc., supra,* at 918. *See also McFeeley, supra,* at 242.

22.     It is Plaintiffs contention herein that the level of control by the Cheetah over its dancers weighs heavily in favor of finding them employees of these Clubs.

### d.  Opportunities for Profit or Loss

23.     This test has been described as weighing "the workers opportunities for profit or loss dependent on his managerial skill."  *See McFeeley, supra.* at p. 243.

24.     In the case at hand, the entertainers in this matter had no control over the business decisions that affect customer volume and spending.  The Club instead controls advertising, marketing, and promotion. (Doc. 168 ¶ 53, 55, 88, 89).  The Club also sets all applicable pricing, from cover charges, drinks, even minimum dance gratuities, further impacting the clientele.  (Doc. 168 ¶ 87, 89). In short, Plaintiffs' opportunity for profit or loss relies fully upon *Defendants*' business skills (Doc. 168 ¶ 90).  *See Stevenson, supra,*  2013 WL 6880921, at *4 (finding the Club to have more risk of loss and more of an impact on potential profits because "[i]t was primarily responsible for attracting customers to the Club, as decisions about marketing and promotions for the Club, its location, its maintenance, aesthetics, and atmosphere, and food and alcohol availability and pricing are made by [the club]").

25.     Accordingly, the profit and loss factor also weighs heavily in favor of finding the dancer employees of the Cheetah.

### e.   <u>Dancers vs. Cheetah Investment</u>

26.      The investment factor weighs the relative investment of the dancers versus the Club.  As stated in *McFeeley, supra,* at p. 243, the more the worker "…is personally invested in the capital and labor of the enterprise, the less the worker is 'economically dependent on the business and the more he is 'in business for himself' and hence an independent contractor. (quoting *Henderson v Iner-Chem Coal Co., Inc.,* 41 F.  3d 567, 570 (10th Cir. 1994).

27.     Defendants invest into the Club in a variety of ways, including but not limited to investing in the buildings, the fixtures, the staff, and the décor. (Doc. 168 ¶ 53, 55, 89). The Club provides the music, the stages, and the other furnishings for their customers. (Doc. 168 ¶ 89). This vast capital outlay stands in stark contrast to the costs incurred by entertainers for hair, makeup, and costumes.[3] (Doc. 168 ¶ 90). See also Stevenson, 2013 WL 6880921, at * 5 (["The club] invested far more than the Plaintiffs on necessary personnel and equipment.  It provided bartenders, waitresses, cashiers, security staff, and disc jockeys . . . the facility, the stages, and the poles. As other courts have noted, the amount spent on clothing, hair styling, and make-up is minor when compared to the club's investment." (citations and internal quotations omitted)).

28.     Accordingly, this factor, too, weighs in favor of employee status.

**f.      Degree of Skill Required to Dance at Cheetah**

29.     Courts have consistently held that there is little to no skill required for nude or semi-nude dancing. See, e.g., Stevenson, supra, 2013 WL 6880921, at * 5 ("Although different entertainers may possess varying degrees of skill, there is no indication that a high degree of skill or experience is necessary. Taking your clothes off on a nightclub stage and dancing provocatively are not the kinds of special skills that suggest independent contractor status."); Clincy, supra, 808 F. Supp. 2d at 1347–48 ("The Court finds that special skills are not required to perform as an entertainer . . . . "); Thompson, supra., 779 F. Supp. 2d at 150 ("[N]othing in the record indicates that 'artistic ability' had anything to do with eligibility to dance at The House."); Morse, supra, 2010 WL 2346334, at *5 (citing Reich v. Circle C, 998 F.2d at 328;

---

[3] Such costs are not determinative or even persuasive evidence of classification status, as independent contractors are not the only ones responsible for maintaining appropriate appearances.  Rather, "[m]any employees in many different fields are also financially responsible for maintaining an appearance suitable to their respective work environments." Stevenson, supra, 2013 WL 6880921, at *5.

*Harrell*, 992 F. Supp. at 1351; and *Priba*, 890 F. Supp. at 593); *Henderson v. 1400 Northside Drive, Inc.*, 110 F. Supp. 3d 1318, 1321–22 (N.D. Ga. 2015) (finding little creativity required to be a dancer where dancers did not need original dance moves, did not need to know how to dance or need special training, and where hiring decisions were simply made based upon appearances).

30.     In the instant case Defendants do not require prospective entertainers to have had any formal dance training or prior exotic dancer experience. (Doc. 168 ¶ 62). Rather, Defendants hire entertainers based on their physical appearance, and their flexibility to be able to take their clothes off in front of the public. (Doc. 168 ¶ 61, 63,64, 65), neither of which requires a special skill.

31.     The skill test also weighs heavily in favor of finding the dancers to be employees.

**g.     Length of Employment.**

32.      The Agreement in the present case provides for termination by either party upon 48 hours' notice. (Doc. 117-1, pg. 15, 27).  The practice of the Cheetah was to fire dancers at will with no notice. (Doc. 168 ¶ 13, 17). This practice strongly suggests the Plaintiffs and Defendants had at "at-will" relationship that could be terminated by either party at any time.

33.     The Court, in the preeminent case of *McFeeley, supra,* at p. 244,  found an at-will relationship between an dancer and a club could be characterized "…either as employee or an independent contractor depending on the other circumstances of the working relationship, we agree with the district court that this temporal element does not affect the outcome here."

**h.     Integral Part of Business.**

34.      Defendants operate a strip club with nude dancers and are therefore in the business of adult entertainment (Doc. 168 ¶ 3, 43, 44, 49); they cannot legitimately claim that

entertainers are not integral to their business.  *See Stevenson, supra,* 2013 WL 6880921, at * 5

("[T]he Plaintiffs' services were an integral part of Pin Ups' business.  Pin Ups is an adult

entertainment club and so it needs adult entertainers."); *Clincy,  supra,* 808 F. Supp. 2d at 1349

("Plaintiffs contend that Defendants' argument that nude dancers are not integral to the Club's

business is 'absurd,' because: Onyx has three stages for dancing, with at least one stage visible

from all areas of the Club; its website and billboard feature scantily clad women; it advertises in

adult magazines; and it admits that it is a strip club. The Court agrees."); *Morse, supra,*  2010

WL 2346334, at *6 ("[E]xotic dancers are obviously essential to the success of a topless

nightclub." (quoting *Harrell,* 992 F. Supp. at 1352)). Defendants admit, that without dancers,

Defendants would simply be another bar. (Doc. 168 ¶ 3).

35.     Thus, this factor too weighs in favor of employee status.

**i.     The Totality of the Circumstances Requires a Finding That the Dancers are Employees.**

36.     Very recently, the United States Court of Appeals for the Fourth Circuit in

*McFeeley v. Jackson Street Entertainment,* 825 F.3d 235 (4th Cir 2016) was faced with a case

with remarkably similar facts. The court, after noting that dancers were required to sign in, the

club had written rules, set the fees for dancers, and made all decisions with regard to hours of

operation, advertising, types of food and beverages sold, and handled music and lighting for the

dancers, found that the "totality of the circumstances speak clearly to an employer-employee

relationship between plaintiffs and defendants." *Id.* at 244.  Similarly, Plaintiff maintains, the

totality of the circumstances presented in this matter requires a ruling that the Plaintiffs, and the

putative class, where, and are, employees of the Cheetah as expressed in the FLSA.

**IV.    Overtime.**

37.     The FLSA requires that employers pay their employees (at least) one and half

times the "regular rate" for any work in excess of 40 hours per workweek. 29 U.S.C. §207(a)(1)(prohibiting "a work week longer that forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed).

38.     When a covered employee is not paid the overtime wage, the FLSA provides a private cause of action against an employer for unpaid wages. *See* 29 U.S.C. §216(b).

39.     Moreover, as argued above, the entertainers of the Cheetah are employees and the Cheetah was required to keep records of Claimant's work hours, including total hours worked each workweek. *See* 29 U.S.C. §211(c).

40.     Indeed, Federal law mandates that an employer is required to keep for three (3) years all payroll records and other records containing, among other things, the following information:

        a.     <u>The time of day and day of week on which the employees' work week begins</u>;

        b.     The regular hourly rate of pay for any workweek in which overtime compensation is due under section 7(a) of the FLSA;

        c.     An explanation of the basis of pay by indicating the monetary amount paid on a per hour, per day, per week, or other basis;

        d.     The amount and nature of each payment which, pursuant to section 7(e) of the FLSA, is excluded from the "regular rate";

        e.     <u>The hours worked each workday and total hours worked each workweek</u>;

  f.  The total daily or weekly straight time earnings or wages due for hours worked during the workday or workweek, exclusive of premium overtime compensation;

  g.  <u>The total premium for overtime hours.</u> This amount excludes the straight-time earnings for overtime hours recorded under this section;

  h.  The total additions to or deductions from wages paid each pay period including employee purchase orders or wage assignments;

  i.  The dates, amounts, and nature of the items which make up the total additions and deductions;

  j.  The total wages paid each pay period; and

  k.  The date of payment and the pay period covered by payment.

29 C.F.R. 516.2, 516.5. (emphasis added).

41. There is no record evidence that Defendants complied with federal law; Defendants failed to maintain such records with respect to Plaintiffs and the putative class of dancers.

42. Because Defendants' records are inaccurate and/or inadequate, Plaintiffs and the putative class can meet their burden under the FLSA by proving that they, in fact, performed work for which they were improperly compensated, and produce sufficient evidence to show the amount and extent of the work "as a matter of a just and reasonable inference." *See, e.g.,* *Anderson v. Mt. Clemens Pottery Co.¸* 328 U.S. 680, 687 (1946).

43. The issue is not whether any dancer worked in excess of forty hours in a gerrymandered 7 day period, rather the question is whether a dancer worked more than 40 hours in a specific work week period that should have been established by the employer in this case.

44.     There are over 4,500 dancers who worked for the Cheetah in the relevant liability time period. (Doc. 147, pg. 2). Defendants neither claim that none of those dancers worked more than 40 hours in a 7 day period, nor that there are complete records as required by Federal law and regulations showing no potential collective or class members are entitled to previously unpaid overtime compensation.

45.     Accordingly, Plaintiffs are entitled to show the amount and extent of work "as a matter of just and reasonable inference" and Defendants Motion for Summary Judgment on this issue must be denied.

V.     **Defendants Counterclaims for Breach of Contract and Unjust Enrichment Fail as a Matter of Law.**

a.     **Off Sets Are Not Permitted.**

46.     Defendants overtly seek to use claims for breach of contract and/or unjust enrichment "… to offset minimum wage liability by the fees (which would be deemed a service charge) retained by Plaintiffs as a result of their performing at the Clubs…." (Doc. 150, pg. 19). Simply stated, they request the Court, that if they provided minimum wage with one hand, it should take it away with another. The foundation of the FLSA does not permit such a shell game.

47.     In *McFeeley v. Jackson Street Entertainment*, the court, in no uncertain terms, ruled as follows:

> Proof of **tips** and fees received **was irrelevant here because the FLSA precludes defendants from using tips or fees to offset minimum wage** they were required to pay plaintiffs.

*Id* at 245. (emphasis added).

48.     The court in *McFeeley* reasoned that the performance fees and other monies paid to the dancers by club patrons could only be used to offset minimum wages if the employer:

1)  notified the employee in advance that they were taking a tip credit pursuant to 29 U.S.C.

203(m) and also paid the dancers the reduced minimum wage while they worked after taking the tip credit; or 2) the employer booked the fees in its gross receipts and distributed the monies to the dancers as a "service charge". *Id* at 20-21. The court ruled there was no evidence in *McFeeley* the employer paid its dancers the reduced tip credit minimum wage, included the performance fees in there gross receipts, or distributed the performance fees to the employees from their accounts. Indeed, as is the case in the Cheetah, the dancers received no minimum wages whatsoever (not even a reduced tip credit minimum wage) and the performance fees were never included in the clubs gross receipts, and accordingly, no monies were paid to dancers out of the clubs accounts. (Doc. 168 ¶ 47, 48, 71).

49.     This ruling is consistent with many other rulings in cases where defendants attempted to recast fees received by dancers for entertainment they provide including personal dances (i.e. lap dances) or performances in private or semi-private rooms as "service charges", as opposed to tips, so they might available for offset against wage their obligations. *See e.g. Henderson v. 1400 Northside Drive, Inc.,* 110 F. Supp. 3d 1318 at 1322-23 (N.D. Ga. 2015)("Here, the fees received by the dancers for entertainment provided on the main stage, the main floor, the VIP lounge, and the VIP rooms were obviously "tips", and so they may not be used to offset the Defendant's minimum wage obligations under the FLSA."); *Hart v. Rick's Cabaret int'l, Inc.,* 967 F. Supp. 2d 901, at 933 (S.D. N.Y. 2013)("[T]he performance fees . . . were not service charges. They were instead tips. Accordingly, the fees cannot be used to satisfy Rick's N.Y. statutory wage obligations."); *Thornton v Crazy Horse, Inc.,* 2012 WL 2175753, at 10 (D. Alaska June 14, 2012)("[T]he table dance fees at both Crazy Horse and Fantasies were 'tips' which cannot be used to off-set the clubs' minimum wage obligations."); *Reich v. Priba Corp.,* 890 F.Supp 586, at 595 (N.D. Tex. 1995)("[T]he fees the entertainers receive for table and

stage dances are appropriately classified as tips."); *Reich v. ABC/York-Estes Corp.,* 1997 WL 264379, at 6(N.D. Ill. May 12, 1997)("This court…agrees…that the table dance fees are more closely related to a tip than a service charge . . . .").

50.     Moreover, 29 CFR § 531.52 provides:  "Tips are the property of the employee whether or not the employee has taken a tip credit under section 3(m) of the FLSA. The employer is prohibited from using an employee's tips, whether  or not it has taken a tip credit, for any reason other than that which is statutorily permitted in section 3(m): As a credit against its minimum wage obligations to the employee, or in furtherance of a valid tip pool."   Cheetah has admitted it did not maintain a tip pool.  (Doc. 168 ¶ 48).

51.     Further this regulation, which prohibits an employer from taking an employee's tips, except for use in as a valid tip credit or valid tip pool, may no longer be waived by an agreement to the contrary. *See Oregon Restaurant and Lodging Asso. v. Perez,* 2016 WL 706678 (9th Cir. 2016) (where the court, given the legislative history of the FLSA, upheld 29 CFR § 531.52 and ruled all tips received must be paid to employees and not used by employers even where minimum wages were paid by employer).

**b.  No Off Set for Breach of Contract**

52.     As stated by the Eleventh Circuit Court of Appeals,  "Congress passed the FLSA [Fair Labor Standards Act] to protect workers from over bearing practices of employers who had greatly unequal bargaining power over their workers." *Billingsley v Citi Trends, Inc.,* 560 Fed. Appx. 914, at 920 (11th Cir 2014). It has long been held, that FLSA provisions are mandatory, and that the "provisions are not subject to negotiation or bargaining between the employer and employee." *Lynn's Food Stores, Inc. v US ex rel. U.S. Dept. of Labor,* 679 F.2d 1350, 1352 (11th

Cir. 1982). <u>FLSA rights cannot be abridged by contract or otherwise waived</u>. *Id. See also Silva v. Miller,* 307 Fed. Appx. 349 (11th Cir 2009).

53.     Other courts have dealt with such creative attempts to circumvent the FLSA in dancer/entertainer cases by counterclaims.

> The court agrees with Plaintiff that the <u>counterclaims fail to state a claim</u> upon which relief may be granted. The <u>breach of contract claim</u> is focused entirely on the recovery of the dance fees as a result of bringing this lawsuit, which is a creative attempt to circumvent the protections of the FLSA and OMFWSA. Individuals may not contract away the right to be classified and compensated properly or the right to be free from retaliation for enforcing those statutory rights. *Barrentine v. Arkansas-Best Freight Sys.,* 450 U.S. 728, 740 101 S.Ct. 1437, 67 L.Ed3d 641(1981)("<u>FLSA rights cannot be abridged by contract</u> or otherwise waived because this would nullify the purposes of the statute and thwart the legislative policies it was designed to effectuate ").
>
> …
>
> Indeed, the FLSA is designed to defeat rather than implement contractual arrangements. *Imars,* 1998 U.S. App. LEXIS 21073, at *15, 1998 WL 598778. <u>To allow the recovery sought would be antithetical to the long standing principles of the FLSA,</u> and its state law counterpart, as the protection afforded by the contract fall short of that provided by those wage laws.

*Wagoner v. N.Y. N.Y., Inc.,* 2015 WL 1468526 at *5 (S. D. Ohio)  (emphasis added).

54.     Plaintiffs' rights under the FLSA cannot be waived or defeated by contract, and Defendants attempt to assert contractual damages as a set off against Plaintiffs statutory minimum wages is legally insufficient.

**c.  <u>No Set Off for Unjust Enrichment</u>**

55.     Defendants also claim that if the Plaintiffs are allowed to keep the performance fees they would be unjustly enriched. Again, Defendants seek the award from Plaintiff of any and all performance fees that the Plaintiffs ever received from patrons at Defendants' club.

56.     In the landmark case of *Hart v. Rick's Cabaret International, Inc, supra.* at 36, the court was faced with similar counterclaim for unjust enrichment. The court granted summary judgment for plaintiffs against this counterclaim by reasoning as follows:

> Defendants, however, flounder on two elements of unjust enrichment. First is the requirement that the dancers have benefitted *at the Club's expense.* As explained above, the performance fees came not from the Club, but from the customers. These fees were not, in any sense, the property of Rick's NY.
>
> …
>
> Separately, as to the final required element of an unjust enrichment claim, the Court finds that "equity and good conscience" do not require restitution of performance fees or the minimum wage payments that are the subject of this lawsuit. As of the start date of the class period, a body of case law held that exotic dancers were employees, entitled under the FLSA to the payment of minimum wages. (*cites omitted*). In the face of such authority, including a decision from a circuit court of appeals, Rick's NY decision to classify its dancers as independent contractor ran the legal risk that its dancers would one day claim employee status and prevail in court.

*Id.* at 36. (emphasis added). *See also Wagoner v. N.Y. N.Y., Inc, supra. at 6* (where the court granted a motion to dismiss a counterclaim for unjust enrichment for failure to state a claim upon which relief may be granted.)

## VI.   <u>Conclusion</u>

Wherefore, Plaintiffs request an Order from this Court Denying Defendants' Motion For Summary Judgment

DATED this 3rd day of February, 2017.

Respectfully submitted,

 /s/ Jack Morgan
Jack Morgan, Esquire
FL Bar No. 126527
2320 First Street

Suite 1000
Fort Myers, Florida  33901
Tel: 239.338.4218
Fax: 239.337.3850
E-mail: jmorgan@ralaw.com

/s/ John B. Gallagher
John B. Gallagher, Esquire
FL Bar No. 271225
2631 East Oakland Park Boulevard
Suite 201
Fort Lauderdale, Florida 33306
Tel: 954.524.1888
Fax: 954.524.1887
E-mail: gal2701@aol.com

ATTORNEYS  IN  CHARGE  FOR  PLAINTIFFS
& CLASS MEMBERS

## CERTIFICATE OF SERVICE

I hereby certify that on February 3, 2017, I electronically filed the foregoing document

with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being

served this day on all counsel of record or pro se parties, either via transmission of Notices of

Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or

parties who are not authorized to receive electronically Notices of Electronic Filing.

By: /s/ Jack C. Morgan, Esq.
Jack C. Morgan, Esq.

11270810 _1