UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-CV-62152-DIMITROULEAS

SARAH SHAW, REBECCA WILES,
JENNIFER SCOTT, and ASHLEY
HOWELL, Individually, and on Behalf of All
Others Similarly Situation,

    Plaintiffs,

v.

THE SET ENTERPRISES, INC., a Florida
Corporation, et al.

    Defendants.
_____/

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**THIS CAUSE** is before the Court upon Defendants' Motion for Summary Judgment [DE 150] ("Motion"). The Court has considered the Motion, Plaintiffs' Amended Response [DE 169], Defendants' Reply [DE 173], and the record in this case, and is otherwise advised in the premises. For the reasons stated herein, the Court will grant in part and deny in part the Motion.

**I.**    **BACKGROUND**[1]

Plaintiffs Sarah Shaw, Rebecca Wiles, and Ashley Howell bring this action on behalf of themselves and others similarly situated pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 202(a), 206, 207, and the Florida Minimum Wage Act ("FMWA"), Fla. Const. art. X § 24 and Fla. Stat. § 448.110. See [DE 20]. Plaintiffs are exotic dancers ("Entertainers" or "Dancers") who formerly performed at two strip clubs ("Clubs") operated by Defendants The Set Enterprises, Inc. ("SEI") and Faneuil Entertainment, Inc. ("FEI"). Their legal dispute centers on

---

[1] All statements in the Background section are derived from uncontested portions of the parties' respective Statements of Material Facts [DE 151 & 168], unless otherwise noted.

whether Plaintiffs and the putative class members should have been classified as employees under the FLSA.  Defendants argue that Plaintiffs were not employees but instead licensees permitted to use the Clubs to perform in consideration for certain house fees and tip-outs.  Plaintiffs claim that they were misclassified and are owed the minimum and overtime wages that the FLSA and FMWA afford employees.

Prior to working at the Clubs, each Dancer was required to sign a Dancer Licensing Agreement ("Agreement").  Under this arrangement, the Dancer was granted a license to "utilize the stage, other entertainment facilities and the dressing rooms located within the Club for the performance of exotic dance routines."  [DE 40-1].  The Clubs also provided bartenders, waitresses, hostesses, security staff, music played by DJs, food and liquor services, and advertising and promotions.  The Dancer, in turn, agreed to pay mandatory house fees and tip-outs to the Clubs' employees and contractors each shift, as set forth in a schedule attached to the Agreement.  The house fees started at $15.00 or $20.00 at the beginning of a shift (day, mid, or night) and increased in progressive increments each half hour after the initial starting time.  Defendants also set the minimum charges for certain entertainment services performed by the Dancers (e.g., table dances, private shows, friction dances), and required the Dancers to pay the Club $5.00 per friction dance performed.  The Dancers retained the remainder of the fees and tips collected directly from patrons and did not receive compensation from Defendants.  The Dancers were offered a position based on their appearance and were not required to have formal training or experience prior to signing the Agreement.

The Agreement required the Dancers to abide by the "Entertainer Rules" attached thereto and posted in the Clubs.  These rules prohibited the Dancers from engaging in illegal activity, such as illegal drug use, prostitution, and underage drinking.  They also instructed the Dancers

2

not to walk through the Clubs wearing "street clothes," chew gum on stage, bring significant others to the Clubs, or frequently ask to leave early, arrive late, or miss shifts. Failure to abide by these rules could result in immediate termination of the Agreement at the Club manager's discretion. Additionally, a Dancer could be turned away and prohibited from working if she was no longer in adequate shape.[2]

The Dancers were responsible for their own attire, hair, and makeup. They could choose when to work but were required to sign in upon arrival. They also were not restricted from working at other clubs or in other lines of work.

Plaintiffs, on their own behalf and on behalf of all others similarly situated, initiated this action on October 13, 2015, and filed the operative Amended Complaint on November 23, 2015. [DE's 1, 20]. Both Defendants filed Answers denying liability, and Defendant FEI asserted counterclaims for breach of contract and unjust enrichment. [DE's 27, 40]. On December 5, 2016, the Court certified this case as an FLSA collective action consisting of all current and former Entertainers who worked for the Clubs during the three years preceding the filing of this action. [DE 134]. On December 28, 2016, Defendants moved for summary judgment on the grounds that: (1) Plaintiffs are not employees under the FLSA; (2) Plaintiffs cannot support their claims for overtime wages; and (3) Plaintiffs' wage claims should be offset by their liability for breach of contract or unjust enrichment. See [DE 150].

## II.   LEGAL STANDARD

A district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the

---

[2] Defendants contest this fact, but it is clearly supported by the record evidence. See [DE 116-1] at 88:1–89:23.

record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). To satisfy this burden, the movant must show the court that "there is an absence of evidence to support the nonmoving party's case." Id. at 325.

After the movant has met its burden under Rule 56(a), the burden of production shifts, and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). As Rule 56 explains, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3). Therefore, the nonmoving party "may not rest upon the mere allegations or denials in its pleadings" but instead must present "specific facts showing that there is a genuine issue for trial." Walker v. Darby, 911 F.2d 1573, 1576–77 (11th Cir. 1990).

In deciding a summary-judgment motion, the Court must view the facts in the light most favorable to the nonmoving party. Davis v. Williams, 451 F.3d 759, 763 (11th Cir. 2006). The Court also must resolve all ambiguities and draw all justifiable inferences in favor of the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

## III.   DISCUSSION

Defendants seek summary judgment on Plaintiffs' FLSA and FMWA claims and Defendant FEI's counterclaims. As explained in more detail below, the Court agrees with Defendants that Plaintiffs have failed to support their claim for FLSA overtime wages. As to all other matters, however, Defendants' Motion must be denied.[3]

---

[3] The Court notes that limited genuine factual disputes remain—namely, whether a Dancer could charge a customer more than the minimum amounts established by the Clubs and the degree to which Defendants actually enforced

4

## A. Classification as Employees

Plaintiffs are employees under the FLSA. The FLSA defines "employee" broadly as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). Under Florida law, the terms "employee" and "employer" "have the meanings established under the [FLSA] and its implementing regulations." Fla. Const. art. X, § 24. The following analysis therefore applies to both the FLSA and FMWA claims.

To determine whether an employer-employee relationship exists, "courts look to the 'economic reality' of the relationship between the alleged employee and alleged employer and whether that relationship demonstrates dependence."[4] Scantland v. Jeffry Knight, Inc., 721 F.3d 1308, 1311 (11th Cir. 2013). In determining the economic reality, courts consider the following factors: (1) the nature and degree of control over the alleged employee; (2) the alleged employee's opportunity for profit or loss; (3) the alleged employee's investment in equipment or materials; (4) whether the service rendered requires a special skill; (5) the degree of permanency and duration of the working relationship; and (6) the extent to which the service rendered is an integral part of the alleged employer's business. Id. at 1311–12. No single factor is dispositive, and the list is not exhaustive. Id. at 1312 n.2 (citing Santelices v. Cable Wiring, 147 F. Supp. 2d 1313, 1319 (S.D. Fla. 2001)). Additionally, "the label attached to the relationship is dispositive only to the degree that it mirrors the economic reality of the relationship." Harrell v. Diamond A Entm't, Inc., 992 F. Supp. 1343, 1353 (M.D. Fla. 1997) (citation omitted). Whether a plaintiff is an "employee" under the FLSA is a question of law for the courts. See Antenor v. D & S Farms, 88 F.3d 925, 929 (11th Cir. 1996).

---

their own rules. However, these contested facts do not preclude the Court from reaching the legal conclusions herein because resolution of the factual disputes "would [not] affect the outcome of the case under controlling substantive law" in light of the other evidence presented. See Liberty Lobby, 477 U.S. at 248.

[4] All parties agree that the economic reality test applies to this dispute.

In their Motion, Defendants point to only two unpublished cases wherein district courts in other circuits held that exotic dancers were not employees under the FLSA. See Hilborn v. Prime Time Club, Inc., 2012 WL 9187581 (E.D. Ark. July 12, 2012); Matson v. 7455, Inc., 2000 WL 1132110 (D. Or. Jan. 14, 2000). In contrast, Plaintiffs have cited dozens of analogous cases in which exotic dancers were held to be employees as a matter of law, and courts in this Circuit issued several of those opinions. See [DE 169] at 4–5.[5] Although Defendants have attempted to distinguish Plaintiffs' supporting authority, the Court does not find that the facts of this case are so materially distinguishable as to warrant a different result. The Court therefore agrees with the great weight of authority and concludes that Plaintiffs are employees under the FLSA.

1. **Nature and Degree of Control**

The first factor in the economic reality test is "the nature and degree of the alleged employer's control as to the manner in which the work is to be performed." Scantland, 721 F.3d at 1312. "Examples of clubs exerting significant control include: fining dancers for absences and

---

[5] See, e.g., McFeeley v. Jackson Street Entm't, LLC, 825 F.3d 235 (4th Cir. 2016); Reich v. Circle C. Invest., Inc., 998 F.2d 324 (5th Cir. 1993); Vaughan v. M-Entm't Props., LLC, No.14-CV-914-SCJ, 2016 WL 7365201 (N.D. Ga. Mar. 15, 2016); Foster v. Gold & Silver Private Club, Inc., 7:14CV00698, 2015 WL 8489998 (W.D. Va. Dec. 9, 2015); Degidio v. Crazy Horse Saloon & Rest., Inc., 4:13-cv-02136-BHH, 2015 WL 5834280 (D. S.C. Sept. 30, 2015); Mason v. Fantasy, LLC, 13-cv-02020-RM-KLM, 2015 WL 4512327 (D. Colo. July 27, 2015); McFeeley v. Jackson St. Entm't, LLC, 47 F. Supp. 3d 260 (D. Md. 2014); Berry v. Great Am. Dream, Inc., 1:13-CV-3297-TWT, 2014 WL 5822691 (N.D. Ga. Nov. 10, 2014); Verma v. 3001 Castor, Inc., No. 13-3034, 2014 WL 2957453 (E.D. Pa. June 30, 2014); Hart v. Rick's Cabaret Int'l, Inc., 967 F. Supp. 2d 901 (S.D.N.Y. 2013); Stevenson v. Great Am. Dream, 1:12-CV-3359-TWT, 2013 WL 6880921 (N.D. Ga. Dec. 31, 2013); Collins v. Barney's Barn, Inc., 4:12CV00685 SWW, 2013 WL 11457080, at *1 (E.D. Ark. Nov. 14, 2013); Butler v. PP & G, Inc., WMN-13-430, 2013 WL 5964476 (D. Md. Nov. 7, 2013); Thornton v. Crazy Horse, Inc., 3:06-cv-00251-TMB, 2012 WL 2175753 (D. Alaska June 14, 2012); Clincy v. Galardi S. Enters., Inc., 808 F. Supp. 2d 1326 (N.D. Ga. 2011); Thompson v. Linda and A., Inc., 779 F. Supp. 2d 139 (D.D.C. 2011); Morse v. Mer Corp., 1:08-cv-1389-WTL-JMS, 2010 WL 2346334 (S.D. Ind. June 4, 2010); Harrell v. Diamond A Entm't, Inc., 992 F. Supp. 1343 (M.D. Fla. 1997); Reich v. Priba Corp., 890 F. Supp. 586 (N.D. Tex. 1995); Martin v. Priba Corp., 3:91-CV-2786-G, 1992 WL 486911 (N.D. Tex. Nov. 6, 1992); Martin v. Circle C Invest., Inc., MO-91-CA-43, 1991 WL 338239 (W.D. Tex. Mar. 27, 1991); Donovan v. Tavern Talent & Placements, Inc., 84-F-401, 1986 WL 32746 (D. Colo. Jan 8, 1986); Jeffcoat v. Alaska Dep't of Labor, 732 P.2d 1073 (Alaska 1987); Milano's Inc. v. Kan. Dep't of Labor, 231 P.3d 1072 (Ct. App. Kan. 2010); Jenks v. D.&B. Corp., 28 Mass. L. Rptr. 579 (Super. Ct. Mass. 2011); Monteiro v. PJD Ent. of Worcester, Inc., 29 Mass. L. Rptr. 203 (Super. Ct. Mass. 2011); Chaves v. RGIS Inventory Specialist, No. 07-2505, 2009 WL 3188948 (Super. Ct. Mass., July 30, 2009); Smith v. Tyad, 209 P.3d 228 (Mont. 2009); Terry v. Sapphire Gentlemen's Club, 336 P.3d 951 (Nev. 2014) (adopting economic reality test); Club Paradise, Inc. v. Okla. Emp't Sec. Com'n, 213 P.3d 1157 (Ct. Civ. App. Okla. 2008); Oregon v. Bomareto Ent., Inc., 956 P.2d 254 (Ore. Ct. of App. 1998); Yard Bird, Inc. v. Va. Emp't Com'n, 503 SE.2d 246 (Ct. App. Va. 1998).

tardiness; enforcing behavioral rules; setting minimum performance fees; and requiring dancers to sign in upon arrival." McFeeley v. Jackson St. Entm't, LLC, 47 F. Supp. 3d 260, 268 (D. Md. 2014), aff'd, 825 F.3d 235 (4th Cir. 2016) (collecting cases). "Courts considering the status of exotic dancers under the FLSA generally look not only to the guidelines set by the club regarding the entertainers' performances and behavior, but also to the club's control over the atmosphere and clientele." Butler v. PP & G, Inc., No. CIV.A. WMN-13-430, 2013 WL 5964476, at *3 (D. Md. Nov. 7, 2013).

In Degidio v. Crazy Horse Saloon & Rest., Inc., for example, the club exercised significant control, even though it did not fine its dancers, because the club maintained either formal or informal rules regarding sign-in requirements, house fees and tip sharing, the sequence in which the performers would appear on stage, minimum prices for select services, promotional materials, and "[v]arious policies intended to maintain a sense of class in the establishment." No. 4:13-CV-02136-BHH, 2015 WL 5834280, at *8 (D.S.C. Sept. 30, 2015). In Butler, the defendant did not create work schedules, did not mandate that the entertainers dance or dress a certain way, allowed each dancer to set her own fees with a suggested minimum, and set behavioral guidelines requiring only that the dancers follow applicable laws. 2013 WL 5964476, at *3. Even viewing the facts in the light most favorable to the defendant, the court held that the defendant exercised significant control because it alone was responsible for "the advertising, location, business hours, maintenance of facility, aesthetics, and inventory of beverages," and therefore "the atmosphere, clientele, and operation of the club." Id. at *4.

Here, Defendants exercised significant control over the Dancers at the Clubs. The Dancers were required to follow "Entertainer Rules" that regulated their appearance and behavior, pay escalating house fees based on the time of their arrival, sign in for shifts, follow

7

procedures for stage rotations, and charge minimum fees set by Defendants. The Dancers had virtually no control over the customer volume, hours, food and drink, or overall atmosphere at the Clubs. Although the Dancers could choose their shifts, clients, and which dances to perform, such discretion is typical for an exotic dancer and does not, without more, establish that the Dancers were independent agents. See Harrell, 992 F. Supp. at 1349–50.

Defendants maintain that the only rules that they actually enforced were those prohibiting illegal activity. See DE 173 at 10. However, lax enforcement of the rules does not evidence lack of significant control because "[a]n employer's 'potential power' to enforce its rules and manage dancers' conduct is a form of control." McFeeley, 825 F.3d at 242 (citations omitted). It is undisputed that Defendants reserved the right to terminate the contracts of Dancers who violated the Entertainer Rules or fee requirements, even if Defendants did not actually exercise that right. Additionally, the fact that the parties entered into contracts entitled "Licensing Agreements" rather than "Employment Agreements" does not alter the analysis. See id. at 239, 241 (finding employer-employee relationship under "Space/Lease Rental Agreement of Business Space"). Therefore, the first factor weighs in favor of a finding that the Dancers are employees.

### 2. Opportunity for Profit and Loss

The second factor is "the alleged employee's opportunity for profit or loss depending upon [her] managerial skill." Scantland, 721 F.3d at 1312. The focus in applying this factor "should remain on the worker's contribution to managerial decision-making and investment relative to the company's." McFeeley, 825 F.3d at 244 (emphasis in original).

Defendants argue that the Dancers' opportunity for profit was largely a product of their own control—that is, how often to work, how long to work, what to wear, what type of entertainment to offer, how to dance, how much to charge for certain services, etc. However,

"[t]his argument—that dancers can 'hustle' to increase their profits—has been almost universally rejected." Id. at 243; see also Thompson v. Linda And A., Inc., 779 F. Supp. 2d 139, 149 (D.D.C. 2011) ("This argument . . . that the ability to earn tips suggests that a worker has an opportunity for profit or loss in the business . . . has been routinely rejected by courts in other FLSA cases involving exotic dancers."); Harrell, 992 F. Supp. at 1352 ("That a dancer may increase her earnings by increased 'hustling' matters little" for determining opportunity for loss and/or profit.). Instead, where the clubs are primarily responsible for drawing customers to the club and set minimum fees for services, the clubs are found to exercise significant control over the dancers' opportunity for profit. See Reich v. Circle C. Invest., Inc., 998 F.2d 324 (5th Cir. 1993); accord Foster v. Gold & Silver Private Club, Inc., No. 7:14CV00698, 2015 WL 8489998, at *4 (W.D. Va. Dec. 9, 2015). Additionally, most courts have found that the risk of loss is much greater for the club than for its entertainers. Clincy v. Galardi S. Enters., Inc., 808 F. Supp. 2d 1326, 1346 (N.D. Ga. 2011) (collecting cases); see also Reich v. Priba Corp., 890 F. Supp. 586, 593 (N.D. Tex. 1995) ("[E]ntertainers do not control the key determinants of profit and loss of a successful enterprise.").

Here, Defendants' risk of profit and loss far exceeded that of the Dancers. By controlling the flow of customers and setting minimum fees for services, Defendants exercised significant control over the Dancers' opportunity for profit. The only risks of loss that the Dancers incurred were the tip-outs, house fees, and $5.00 friction dance fees. The remainder of the overhead costs fell on Defendants. Thus, the second factor weighs strongly in favor of finding an employer-employee relationship.

### 3. Investment in Equipment or Materials

The third factor in the economic reality test is "the alleged employee's investment in equipment or materials required for [her] task." Scantland, 721 F.3d at 1312. As with the second factor, the investment analysis focuses on the entertainer's investment relative to that of the club. McFeeley, 825 F.3d at 244. The courts which have addressed this factor have almost universally concluded that a dancer's investment is minor when compared to the club's investment. Harrell, 992 F. Supp. at 1350; but see Hilborn, 2012 WL 9187581, at *1 (finding dancers' investment significant).

This case is no exception. Like employees in many fields, the Dancers were financially responsible for maintaining an appearance suitable to their work environment. Specifically, the Dancers invested in their hair, makeup, and costumes. In contrast, Defendants' investments included the club facilities, parking, stages, fixtures, décor, advertising and promotion, bartenders, waitresses, hostesses, security staff, music equipment, and general operating bills and expenses. Defendants' investments in the Clubs clearly and substantially outweighed the Dancers' investments. Thus, the third factor weighs in favor of the Dancers being employees.

### 4. Special Skill

The fourth factor is "whether the service rendered requires a special skill." Scantland, 721 F.3d at 1312. Other courts have nearly all held that "there is no special skill required to be an exotic dancer, pointing to the lack of instruction, certification, and prior experience required to become an exotic dancer." McFeeley, 47 F. Supp. 3d at 271–72 (citing cases); see also Clincy, 808 F. Supp. 2d 1326, 1348 (N.D. Ga. 2011) (finding no special skill required even though club preferred prior experience and required dancers to audition). "Although different entertainers may possess varying degrees of skill, there is no indication that a high degree of skill

or experience is necessary." Stevenson v. Great Am. Dream, Inc., No. 1:12-CV-3359-TWT, 2013 WL 6880921, at *5 (N.D. Ga. Dec. 31, 2013) (emphasis in original).

Defendants did not require the Dancers to have the kind of special skill that would bring them outside the FLSA's definition of an employee. Defendants did not require prospective Dancers to have any formal training or prior experience. The only requirement to work at the Clubs was that the Dancer was an attractive female. The fourth factor weighs heavily in favor of finding that the Dancers are employees.

### 5. Permanency and Duration of Relationship

Fifth, the court considers "the degree of permanency and duration of the working relationship." Scantland, 721 F.3d at 1312. This is the only factor that tips against a finding of employee status. The Dancers were free to choose when they worked and were not required to provide advance notice of their selected shifts. They also were not restricted from working at other clubs or in other lines of work. However, "courts have generally accorded this factor little weight in challenges brought by exotic dancers given the inherently 'itinerant' nature of their work." McFeeley, 825 F.3d at 244 (citations omitted); see Hart v. Rick's Cabaret Int'l, Inc., 967 F. Supp. 2d 901, 921 (S.D.N.Y. 2013) (collecting cases).

### 6. Integral Part of Business

The sixth and final factor is "the extent to which the service rendered is an integral part of the alleged employer's business." Scantland, 721 F.3d at 1312. Defendants argue that the Dancers were not integral to their business because the Clubs' primary source of revenue is food and alcohol, and the Clubs provide other forms of entertainment, such as viewing premium sporting events. "Courts have uniformly characterized such arguments as 'simply unconvincing,' 'absurd,' and "fl[ying] in the face of logic' . . . . Exotic dancers are obviously

11

essential to the success of a topless nightclub." Vaughan v. M-Entm't Props., LLC, No.14-CV-914-SCJ, 2016 WL 7365201 (N.D. Ga. Mar. 15, 2016) (internal citations omitted).  Without exotic dancers, the Clubs would be ordinary bars, not strip clubs.  The sixth factor weighs heavily in favor of finding employee status.

### 7. Consideration of All Factors

The totality of the circumstances requires a finding that Plaintiffs and the putative class members are employees as defined by the FLSA.  Considering the preceding factors, the economic reality is that Defendants controlled the economic opportunity of the Dancers.  Accordingly, the portion of Defendants' Motion seeking summary judgment on the issue of employee status will be denied.

### B. Overtime Claims

Plaintiffs have not presented evidence beyond the pleadings showing that a reasonable jury could find that Defendants owe them any overtime wages.  The FLSA requires employers to pay their employees at least one and a half times their regular wage for every hour worked in excess of forty per week.  29 U.S.C. § 207(a)(1).  If the employer failed to keep time records, an employee meets her initial burden by producing sufficient evidence to show: (1) that she has in fact performed work for which she was improperly compensated; and (2) the amount and extent of that work as a matter of just and reasonable inference.  Lamonica v. Safe Hurricane Shutters, Inc., 711 F.3d 1299, 1315 (11th Cir. 2013) (citation omitted).  "The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence."  Id.

Here, Plaintiffs have not met their initial burden to come forward with evidence that any

of them worked more than 40 hours per week. To the contrary, Plaintiffs' attorney demand letters to Defendants do not claim any overtime wages due to the named Plaintiffs or any other Dancers. See [DE 20-6]. Similarly, Plaintiffs stated in their interrogatory responses that they worked at the Clubs between 32 and 35 hours per week. See [DE's 152-7 to 152-9]. When asked to state their claims for unpaid overtime wages, Plaintiffs did not identify any hours of unpaid overtime. Id. Plaintiffs did not present any evidence in their Amended Response to Defendants' Motion to support a reasonable inference that any of the Dancers worked more than 40 hours per week, nor has any opt-in Plaintiff presented such evidence.

In their defense, Plaintiffs argue that Defendants did not provide accurate records of the amount of time that each Dancer worked. Even if true, inaccurate reporting would not excuse Plaintiffs from satisfying their initial burden of coming forward with some evidence to support a just and reasonable inference that they worked more than 40 hours per week, even if only on certain occasions. Summary judgment therefore will be granted in favor of Defendants as to Count I of the Amended Complaint.[6]

### C. Counterclaims

Defendant FEI's counterclaims for breach of contract and, alternatively, unjust enrichment fail as a matter of law. Defendants argue that while they abided by the terms of the Agreements, Plaintiffs have attempted "to repudiate their Agreements by retaining all fees and tips they were paid, while simultaneously seeking to obtain additional compensation in the form of wages." [DE 150] at 16. Allowing the Dancers to collect minimum wages in addition to

---

[6] The Court's ruling in Section B of this Order regarding Overtime Claims is based on the evidence provided in the record in support of and in opposition to Defendants' summary judgment motion. However, the Court notes that, while discovery regarding the named Plaintiffs has closed, discovery regarding the opt-in Plaintiffs is still ongoing. Accordingly, while summary judgment is entered in favor of Defendants as to the Overtime Claims, this ruling is without prejudice to being revisited as to any opt-in Plaintiffs' potential overtime claims -- in the event the ongoing discovery reveals evidence that one or more of the opt-in Plaintiffs worked more than 40 hours per week.

retaining service fees would unjustly enrich them, Defendants claim.  Therefore, Defendants contend that they are entitled to offset their minimum wage liability under both the FLSA and FMWA with the amount of fees retained by the Dancers.[7]  The Court disagrees.

### 1. Tip and Service Charge Offsets

Defendants often describe FEI's counterclaims as seeking an "offset," but no statutory offset is available.  As a general principle, the FLSA precludes employers from using tips and fees to offset the minimum wages that they are required to pay employees.  See McFeeley, 825 F.3d at 245.  There are, however, highly circumscribed exceptions for tips and service charges.  Defendants have not established that they qualify for either of these exceptions to their minimum wage obligations to the Dancers.

Although Defendants insist that they are not seeking a "tip credit," most courts have concluded that performance fees collected by exotic dancers should be treated as tips.  See, e.g., Priba, 890 F. Supp. at 595 ("[T]he fees the entertainers receive for table and stage dances are appropriately classified as tips."); Henderson v. 1400 Northside Drive, Inc., 110 F. Supp. 3d 1318, 1322 (N.D. Ga. 2015) ("[T]he fees received by the dancers for entertainment provided on the main stage, the main floor, the VIP lounge, and the VIP rooms were obviously 'tips' . . . ."); Hart, 967 F. Supp. 2d at 933 ("[T]he Court finds that the performance fees charged by [the club] were not service charges.  They were, instead, tips."); Thornton v. Crazy Horse, Inc., No. 3:06-CV-00251-TMB, 2012 WL 2175753, at *10 (D. Alaska June 14, 2012) ("[T]he table dance fees at both Crazy Horse and Fantasies were 'tips' which cannot be used to off-set the clubs' minimum wage obligations.").  To be eligible for a tip credit under the FLSA, an employer must pay a "reduced minimum wage" set by the government to those employees receiving tip income

---

[7] The FMWA incorporates the exemptions and restrictions in sections 213 and 214 of the FLSA "as interpreted by applicable federal regulations and implemented by the Secretary of Labor."  Fla. Stat. § 448.110.

14

and notify the employees that they will be paid the reduced minimum wage. McFeeley, 825 F.3d at 245–46. Defendants did not pay the Dancers any wages and gave no notice. Accordingly, they are not entitled to a tip credit offset.

Nor have Defendants demonstrated that they would be entitled to an offset if the Court were to construe the dance fees as service charges. In order to count a service charge as an offset to an employer's minimum wage liability, the service charge must "have been included in the establishment's gross receipts" and "distributed by the employer to its employees." Id. at 246 (internal citations omitted); see also Vaughan 2016 WL 7365201, at *11 (explaining that all courts interpreting 29 C.F.R. § 531.55(b) have concluded that the regulation requires an employer "to include such service fees in its gross receipts in order to count the amount toward the employer's minimum-wage requirement."). It is undisputed that the dance fees were paid by the customers directly to the Dancers, and the Dancers retained most of those fees. The Clubs did not collect, record, and redistribute the fees to the Dancers. Therefore, Defendants do not qualify for a service charge offset.

### 2. Unjust Enrichment

Defendant FEI's counterclaim for unjust enrichment fails as a matter of law. To succeed on a counterclaim for unjust enrichment, a defendant must prove: (1) a benefit conferred upon the plaintiff by the defendant; (2) the plaintiff appreciated the benefit; and (3) the plaintiff's acceptance and "retention of the benefit under circumstances that make it inequitable for him to retain it without paying the value thereof." Rollins, Inc. v. Butland, 951 So. 2d 860, 876 (Fla. Dist. Ct. App. 2006).

The court in Hart applied a similar New York statute and rejected the same argument that Defendants make here—that is, "that the dancers will be unjustly enriched if they are allowed to

retain performance fees alongside the statutorily required minimum wage payments." 967 F. Supp. 2d at 934. The club in Hart could not show that it had conferred a benefit on the dancers because "the performance fees came not from the [c]lub, but from customers" and therefore "were not, in any sense, the property of [the club]." Id. The club also failed to establish that "equity and good conscience" required restitution of the performance fees in light of the substantial body of case law holding that exotic dancers are employees entitled to minimum wages under the FLSA. Id. at 935. "Having misclassified plaintiffs and therefore breached their statutory duties as employers, defendants [could] not avoid liability for such duties" by claiming unjust enrichment. Id.

As in Hart, Defendants cannot establish that the performance fees paid by customers to the Dancers were benefits that Defendants conferred upon them. Additionally, Defendants took a risk by classifying the Dancers as licensees, rather than employees, despite a substantial body of case law holding that exotic dancers are employees. It is hardly inequitable to allow the Dancers to retain the supposed "benefit" of Defendants' unsuccessful attempt to avoid creating an employer-employee relationship.

### 3. Breach of Contract

Finally, Defendant FEI cannot succeed on its breach of contract counterclaim. "FLSA rights cannot be abridged by contract or otherwise waived because this would 'nullify the purposes' of the statute and thwart the legislative policies it was designed to effectuate." Lynn's Food Stores, Inc. v. U.S. ex rel. U.S. Dep't of Labor, 679 F.2d 1350, 1352 (11th Cir. 1982). "To allow employers to simply defeat the application of the FLSA through contracts of adhesion would render the protections that statute entirely toothless." Vaughan, 2016 WL 7365201, at *13. Thus, Defendant FEI's position that it is entitled to damages because Plaintiffs objected to

their misclassification as licensees and pursued their statutory and constitutional rights to minimum wages is not only contrary to public policy but fails as a matter of law.

### IV. CONCLUSION

In light of the foregoing, it is hereby **ORDERED AND ADJUDGED** that Defendants' Motion for Summary Judgment [DE 150] is **GRANTED in part** and **DENIED in part** as follows:

1. Summary judgment is entered in favor of Defendants and against Plaintiffs on Count I of the Amended Complaint for Overtime Claims, without prejudice.[8]

2. The portion of Defendants' Motion seeking summary judgment on the issue of Plaintiffs' employment status is denied, as the Court finds that Plaintiffs are employees for purposes of the FLSA and FMWA.

3. Summary judgment is denied as to Defendant FEI's counterclaims for offsets, unjust enrichment, and breach of contract, as the Court finds that each of these Counterclaims fail.

4. The Court defers ruling on any requests for attorneys' fees and costs stemming from the rulings in this Order. The parties may renew requests for attorneys' fees and costs in a separate post-trial motion.

5. Defendants' Request for Oral Argument [DE 177] is **DENIED AS MOOT**.

---

[8] *See supra* at p. 13, n. 6

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 17th day of March, 2017.

_____
WILLIAM P. DIMITROULEAS
United States District Judge

Copies provided to:
Counsel of record