# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### FORT LAUDERDALE DIVISION

### CASE NO.: 15-62152-CIV-DIMITROULEAS/SNOW

**SARAH SHAW, REBECCA WILES,**
**and ASHLEY HOWELL, individually**
**and on behalf of all others similarly**
**situated,**

      **Plaintiffs,**

**v.**

**THE SET ENTERPRISES, INC., a**
**Florida Corporation,** *et al.*

      **Defendants.**
_____/

**PLAINTIFFS'** *UNOPPOSED* **MOTION FOR PRELIMINARY APPROVAL OF**
**SETTLEMENT, CERTIFICATION OF THE SETTLEMENT CLASS UNDER FED.**
**R. CIV. P. 23, APPOINTMENT OF PLAINTIFFS' COUNSEL AS CLASS**
**COUNSEL, AND APPROVAL OF THE PROPOSED NOTICE OF SETTLEMENT**
**AND CLASS ACTION SETTLEMENT PROCEDURE AND**
**MEMORANDUM OF LAW IN SUPPORT**

Submitted by:

Andrew Ross Frisch, Esq.
MORGAN & MORGAN P.A.
600 North Pine Island Road, Suite 400
Plantation, Florida 33324
Telephone: (954) WORKERS
Facsimile:  (954) 327-3013

Jack Clyde Morgan, III
ALOIA ROLAND & LUBELL, PLLC
2254 1st Street
Fort Myers, Florida 33901
Telephone: (239) 791-7950
Facsimile:  (239) 791-7951

John B. Gallagher
John B. Gallagher, P.A.
2631 East Oakland Park Blvd., Suite 201
Fort Lauderdale, Florida 33306
Telephone:  (954) 524-1888
Facsimile:  (954) 524-1887

*Attorneys for Plaintiffs and the Settlement Class*

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................ 1

    I.     Factual and Procedural Background ............................................... 1

        A.    Factual Allegations ......................................................... 1

        B.    Procedural History ......................................................... 3

        C.    Discovery ..................................................................... 4

        D.    Settlement Negotiations ................................................... 5

    II. Summary of the Settlement Terms ................................................. 5

        A.    The Settlement Fund ....................................................... 5

        B.    Release ........................................................................ 6

        C.    Eligible Class Members ................................................... 6

        D.    Allocation Formula ........................................................ 6

        E.    Attorneys' Fees and Litigation Costs .................................. 7

        F.    Service Payments .......................................................... 8

    III. Class Action Settlement Procedure ............................................. 8

ARGUMENT ..................................................................................................... 11

    I.     The Rule 23 Settlement Class Satisfies the Requirements of FRCP 23...........11

        A.    Numerosity.............................................…...………….…..12

        B.    Commonality.............................................……………...12

        C.    Typicality..............................................…..…………………….12

        D.    Adequacy..............................................…...…………………..13

        E.    Predominance and  Superiority..........………………………….13

    II.    Preliminary Approval of the Settlement Is Appropriate ................ 14

A.   The Settlement Is Fair, Reasonable, and Adequate ............................ 16

    1.   The Likelihood of Success at Trial .......................................... 16

    2.   Range of Possible Recovery and Range at Which Settlement is Fair. ....................................................................................... 19

    3.   Litigation Through Trial Would Be Complex, Costly, and Long ........................................................................................... 19

    4.   The Reaction to the Settlement Has Been Positive ................. 20

    5.   Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly ............................................. 20

III.   The Proposed Notice Is Appropriate. ............................................... 21

CONCLUSION ........................................................................................ 22

## INTRODUCTION

Subject to Court approval, the parties have settled Plaintiffs' claims on a class-wide common fund basis of up to $1,900,000.00, $400,000 of which is designated for attorneys' fees and costs. The proposed settlement satisfies all of the criteria for preliminary approval under Rule 23 of the Federal Rules of Civil Procedure, as well as the criteria for approval under the FLSA. With this motion, Plaintiffs respectfully request that the Court: (1) grant preliminary approval of the Joint Stipulation of Class and Collective Action Settlement Agreement and Release ("Settlement Agreement"), attached as Exhibit A to the Declaration of John B. Gallagher in Support of Plaintiff's Motion for Preliminary Approval of Settlement ("Gallagher Decl.") attached hereto as **EXHIBIT 1**; (2) approve the proposed Notice of Class and Collective Action Settlement ("Notice"), attached as Exhibit B to the Declaration of John B. Gallagher, and direct its distribution; and (3) approve the proposed schedule for final settlement approval, as outlined herein.

## I.   Factual and Procedural Background

### A.   Factual Allegations.

Plaintiffs, SARAH SHAW ("Shaw"), REBECCA WILES ("Wiles"), and ASHLEY HOWELL ("Howell") (collectively "Plaintiffs"), are members of a putative collective action under the FLSA, as well as a putative Rule 23 class, comprised of entertainers ("Entertainers") who allegedly worked for Defendants, THE SET ENTERPRISES, INC., and FANEUIL ENTERTAINMENT, INC.,  (collectively "Defendants" or "Cheetah") in Florida within the five (5) years preceding the filing of the Complaint.  Including Plaintiffs, there are approximately 4,500 current and former Entertainers who perform or performed at establishments owned and/or operated (allegedly) by the Defendants, and who comprise the

putative Rule 23 class.

Plaintiffs allege that Defendants own and/or operate three (3) adult entertainment clubs that conduct business under the moniker "Cheetah," with locations in Hallandale, Florida, Pompano, Florida, and Palm Beach, Florida (the "Nightclubs").  Plaintiffs and the putative class members claim to have performed as Entertainers at one of the Nightclubs throughout the relevant class period (October 13, 2010 through June 30, 2017).

At all times throughout the time period from October 2010 through June 2017, Plaintiffs received no hourly wage or salary from the Nightclubs based upon their classification as independent contractors and/or licensees.   In this case, Plaintiffs alleged that Defendants misclassified them as independent contractors or licensees, when they were actually employees, and as a result Defendants failed to pay them legally mandated minimum wages and/or overtime wages as required under the Fair Labor Standards Act ("FLSA") and the Florida Minimum Wage Act ("FLMWA").

In this lawsuit (also referred to herein as the "Litigation"), Plaintiffs alleged that Defendants violated the FLSA and FLMWA by virtue of their failure to pay Entertainers minimum wages and/or overtime wages in one or more workweeks.  As such, Plaintiffs claimed that Defendants were liable to them for an amount equal to the minimum wage for all hours worked and time and one-half minimum wage for any overtime hours. *See* Complaint (D.E. 1), Amended Complaint (D.E. 20), and Second Amended Complaint (D.E. 228).

Although this settlement was reached after the Court held that Plaintiffs were employees and not independent contractors, and after the Court granted Defendants' motion for summary judgment on the Plaintiffs' claims for overtime wages under the FLSA,

2

Defendants maintain that neither Plaintiffs nor any of the Entertainers who make up the putative class worked more than 40 hours in any workweek.  Defendants further assert that neither Plaintiffs nor the putative class were misclassified and therefore fall outside of the coverage provided by the FLSA and FLMWA.  The Parties also continue to disagree about the type and amount of damages each Entertainer would be entitled to (if any).  Moreover, Defendants assert that the Plaintiffs have not complied with certain Florida statutes that they contend are legal prerequisites to being able to initiate the state law claims alleged here.

### B.     Procedural History.

Plaintiffs commenced this case by filing a Complaint on October 13, 2015 alleging violations of the FLSA. *See* Gallagher Decl. ¶ 18; D.E. 1.  Thereafter, they filed an Amended Class and Collective Action Complaint on November 23, 2015, in which they added class action claims under the Florida Constitution ("FLMWA"). *See* Gallagher Decl. ¶ 19; D.E. 20. Subsequently, Plaintiffs moved for conditional certification of a collective action under the FLSA and sought to send Court-approved notice to all Entertainers similarly situated to them. *See* Gallagher Decl. ¶ 20; D.E. 125.  The Court granted Plaintiffs' Motion for Conditional Certification in part by Order dated December 5, 2016. *See* Gallagher Decl. ¶ 21; D.E. 134.  37 additional Entertainers (40 total including the named Plaintiffs) opted in to the case by filing their consents to join prior to the expiration of the opt-in period.  *See* Docket, generally.

On December 28, 2016, Defendants filed their Motion for Summary Judgment. D.E. 150.  Plaintiffs filed their Opposition to Defendants' Motion for Summary Judgment on January 11, 2017. D.E. 160.  Thereafter, Defendants filed their Reply to their Motion for Summary Judgment on February 10, 2017. D.E. 173.  By Order dated March 17, 2017, the Court granted in part and denied in part Defendants' Motion for Summary Judgment. D.E. 186.  Specifically, the

3

Court held that Plaintiffs were employees subject to the coverage of the FLSA and not independent contractors, and that Defendants could not credit against Plaintiffs' wages the dance tips Plaintiffs were paid by patrons. *See id.*

Following the Court's Order on Defendants' Motion for Summary Judgment, on April 19, 2017, the Parties agreed to attend a settlement conference to be conducted by a Magistrate Judge and filed a Joint Motion for Order Referring the Parties to Attend a Settlement Conference before Magistrate Judge Edwin G. Torres or Jonathan Goodman. D.E. 200. At that settlement conference, the Parties fully resolved all pending claims on a class-wide basis. *See* Settlement Agreement attached to Gallagher Declaration as Exhibit A.

In order to conform the pleadings to the scope of the Parties' settlement, Plaintiffs filed an amended operative Complaint, the Second Amended Complaint on May 15, 2017. *See* Gallagher Decl. ¶ 29; D.E. 228.

### C.    Discovery.

During the course of discovery and as part of settlement negotiations, Defendants made thousands of pages of documents and computer records available to Plaintiffs and their expert accountant. These documents included corporate policies, Entertainer onboarding documents, independent contractor and licensee agreements between most class members and one or more of the Defendants, internal records pertaining to the period of time each class member performed at one of the Nightclubs, and Entertainer rosters. The Parties also conducted 14 depositions, including the depositions of the corporate representative for several of the Defendants and twelve of the Plaintiffs and opt-in Plaintiffs. *See* Gallagher Decl., ¶¶ 30-32. In addition, Plaintiffs' counsel interviewed many of the opt-in Plaintiffs regarding the alleged wage violations at issue in the case. *See* Gallagher Decl. ¶ 33.

4

**D.**   **Settlement Negotiations and Mediations.**

On March 7, 2017, the Parties participated in a half-day mediation in Fort Lauderdale, Florida, with the assistance of Mediator, Cindy Hannah. *See* Gallagher Decl. ¶ 34.   Ms. Hannah is a very knowledgeable and skilled wage and hour class action mediator. *See* Gallagher Decl. ¶ 35.

Ultimately, the parties were unable to reach a settlement at mediation and the mediation reached an impasse. *See* Gallagher Decl. ¶ 36.   Subsequent to the half-day mediation, the Parties continued their settlement discussions.   However, they were still unable to reach an agreement to resolve the instant claims.

Following the Court's Order on Defendants' Motion for Summary Judgment, on April 19, 2017, the Parties commenced renewed settlement talks, and agreed to attend a settlement conference to be conducted by a Magistrate Judge and filed their Joint Motion for Order Referring the Parties to Attend a Settlement Conference before Magistrate Judge Edwin G. Torres or Jonathan Goodman.  D.E. 200.

In the three (3) weeks leading up to the Magistrate-conducted settlement conference, the Parties engaged in intense settlement negotiations, regarding both the monetary recovery and the material non-monetary terms.   To that end, the Parties exchanged half a dozen drafts and counter-drafts of material terms in the three (3) weeks prior to the settlement conference.

At the settlement conference, the Parties fully resolved all pending claims on a class-wide basis. *See* Settlement Agreement attached to Gallagher Declaration as Exhibit A.

**II.**   **Summary of the Settlement Terms**

**A.**   **The Settlement Fund.**

Defendants have agreed to create a settlement fund of up to $1,900,000.00 ("the

Fund"). *See* Settlement Agreement, ¶ 1; *see also* Gallagher Decl. ¶ 42**.** The Fund will cover all awards to class members, Court-approved attorneys' fees, Court-approved service payments to the three (3) named-Plaintiffs, and 1/3 of the costs of administering the settlement (to the extent fewer than 101 class members submit valid claims). *Id*., ¶ 16; Gallagher Decl. ¶ 43.

### B.   Release.

Class Members who do not opt out of the settlement will release all Florida wage and hour claims that were brought in the litigation or that are based on the same facts and circumstances as the claims in the litigation. *See* Gallagher Decl. ¶ 44.  In addition to releasing their Florida wage and hour claims, all Class Members, including Sarah Shaw, Rebecca Wiles, and Ashley Howell, who timely submit a claim will acknowledge that their FLSA claims have been fully paid and resolved, and will release their respective state wage and hour claims. *See* Gallagher Decl. ¶ 45.[1]

### C.   Eligible Class Members.

The Rule 23 class consists of 4,500 current and former Entertainers who performed at one of the Nightclubs at any time between October 2010 and June 2017. *Id.,* ¶ 5, Gallagher Decl. ¶46.

### D.   Allocation Formula.

Class members who timely submit claim forms, and those who have submitted a consent to join the FLSA case, will be paid pursuant to an allocation formula based on the period of time they performed at a Nightclub during the applicable limitations periods, and specifically, the number of days they performed as an Entertainer at one of the Nightclubs

---

[1] Participating Class Members who do not submit a claim will release their Florida wage and hour claims, but by law cannot release FLSA claims they may have.

6

within the class period. *Id.,* ¶ 2, Gallagher Decl. ¶47. Class members who timely submit claim forms, and those who have submitted a consent to join the FLSA case will receive $64.00 per day worked, as indicated on Defendants' records. *Id.,* ¶ 3, Gallagher Decl. ¶48. IRS Forms W-2 and 1099-MISC shall be issued by the appropriate Defendants to each Plaintiff and to each Class Member to whom compensation is found to be owed pursuant to the settlement terms, as applicable under IRS regulations. *Id.* ¶ 8. Pursuant to the allocation formula, Rule 23 class members will receive a minimum of $64.00 if they performedfor at least three days or more during the class period. *Id,* ¶ 3. To the extent Defendants are unable to locate records pertaining to the number of shifts a class member performed during certain periods of time, such class members shall be allocated $256 per month for such months in which there are no records, with a maximum payout for a full year without records of $3,000 per year. *Id.,* ¶ 2. However, this maximum shall not apply to periods where Defendants have records. *Id.*

### E. **Attorneys' Fees and Litigation Costs.**

Plaintiffs' counsel will apply for approximately twenty-one and a half (21.5%) of the Fund as attorneys' fees ($400,000.00) and costs.[2] *Id.*, ¶ 4, Gallagher Decl. ¶53. Plaintiffs' counsel will

---

[2] This is within the range of typical fee award in a common fund case. *See, e.g., Seghroughni v. Advantus Rest., Inc.*, 2015 WL 2255278, at *1 (M.D. Fla. May 13, 2015) ("An attorney's fee… which is one-third of the settlement fund… is fair and reasonable in light of the results obtained by the Lead Counsel, the risks associated with this action, the Lead Counsel's ability and experience in class action litigation, and fee awards in comparable cases."); *Wolff v. Cash 4 Titles*, 2012 WL 5290155, at *4 (S.D. Fla. Sept. 26, 2012)("One-third of the recovery is considered standard in a contingency fee agreement."); *Willix v. Healthfirst, Inc*., 2011 WL 754862, at *7 (E.D.N.Y. Feb. 18, 2011) ("Class Counsel's request for 33 1/3% of the fund is reasonable and 'consistent with the norms of class litigation…' ") (quoting *Gilliam v. Addicts Rehab. Ctr. Fund*, 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008)); *Hosier v. Mattress Firm, Inc*., 2012 WL 2813960, at *4 (M.D. Fla. June 8, 2012) (approving a common fund FLSA settlement which provided 30% of the common fund for attorneys' fees and costs); *Morefield v. NoteWorld, LLC*, 2012 WL 1355573 (S.D. Ga. April 18, 2012) (class settlement approved with

file a formal motion for approval of fees and costs along with their motion for final approval of the settlement. *See* Fed. R. Civ. P. 23(h) & 54(d)(2).

The Court need not decide the attorneys' fees and costs issue now, with respect to the Rule 23 Class settlement.

### F.   Service Payments.

In addition to their individual awards under the allocation formula, Plaintiffs Sarah Shaw, Rebecca Wiles and Ashley Howell, all of whom actively participated in the Litigation, will apply for additional payment of $5,000.00, payable from the common fund, in recognition of the services they rendered on behalf of the class ("Service Payments"). *See* Settlement Agreement, ¶ 13.

Such service awards "are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation." *Khait v. Whirlpool Corp.*, 2010 WL 2025106, at *9 (E.D.N.Y. Jan. 20, 2010); *Allapattah Services, Inc. v. Exxon Corp.,* 454 F.Supp.2d 1185, 1218 (S.D. Fla. 2006) (Service awards "compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation."); *see also Espenscheid v. DirectSat USA, LLC*, 688 F.3d 872 (7th Cir. 2012) (discussing the public policy reasons for incentive/service awards to class representatives). Like the application for attorneys' fees, the Settlement Agreement is not conditioned on the award of

---

33 1/3 of the common fund payable as attorneys' fees); *Atkinson v. Wal-Mart Stores, Inc.*, 2011 WL 6846747, at *6 (M.D. Fla.  Dec. 29, 2011)(approving class settlement with one-third of maximum common fund apportioned as attorneys' fees); *Gutter v. E.I. DuPont De Nemours & Co.,* No. 1:95–cv–02152–ASG, D.E. 626 at 7 (S.D. Fla. May 30, 2003) (awarding class counsel 33.3% of the Settlement Fund as attorneys' fees ($1,201,728.42) because they expended significant time and resources on a purely contingent basis under the common fund theory); *In re Terazosin Hydrochloride Antitrust Litig.,* No. 1:99–md–01317–PAS, Doc. No. 1557 at 8–10 (S.D. Fla. Apr. 19, 2005) (awarding class counsel 33.3% of settlement fund in part because they prosecuted the action on a wholly contingent basis).

the Service Payments.  Settlement Agreement, ¶ 13. Plaintiffs will file a motion for approval of

the Service Payments along with their motion for final approval of the settlement.

## III.   Class Action Settlement Procedure

Courts have established a defined procedure and specific criteria for settlement

approval in class action settlements that include three distinct steps:

1. Preliminary approval of the proposed settlement after submission to the Court of a written motion for preliminary approval;

2. Dissemination of mailed and/or published notice of settlement to all affected class members; and

3. A final settlement approval hearing at which class members may be heard regarding the settlement, and at which argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*See* Fed. R. Civ. P. 23(e); *see also* Herbert B. Newberg & Alba Conte, *Newberg on Class*

*Actions* ("*Newberg*") §§ 11.22 *et seq.* (4th ed. 2002); *Saccoccio v. JP Morgan Chase Bank,*

*N.A.*, 297 F.R.D. 683, 688 (S.D. Fla. 2014) (discussing steps), *appeal dismissed* (Oct. 15, 2014);

*Khait*, 2010 WL 2025106, at *1. This process safeguards class members' procedural due

process rights and enables the Court to fulfill its role as the guardian of class interests.

With this motion, Plaintiffs request that the Court take the first step – granting

preliminary approval of the Settlement Agreement, and approving the proposed Notice and

authorizing the claims administrator to send it.  The parties respectfully submit for the

Court's approval the following schedule for final resolution of this matter:

1. Within 14 days of the Court's granting of preliminary approval, Plaintiffs' counsel will provide the Claims Administrator with the names and contact information for all class members that already have been provided to them by Defendants.

2. Within 14 days thereafter, the Claims Administrator will mail the Notice to class members.

3. Class members will have 60 days after the date the Notice is mailed to file a claim form, opt out of or object to the settlement ("Notice Period"). Settlement Agreement, ¶ 18.  Class members who timely file a claim form within the 60 day period will be considered the "Qualified Class Members."

4. A final fairness hearing will be held as soon as is convenient for the Court.

5. Plaintiffs will file a Motion for Final Settlement Approval no later than 14 days before the fairness hearing.

6. After the fairness hearing, if the Court grants Plaintiffs' Motion for Final Settlement Approval, the Court will issue a Final Order and Judgment. If no party appeals the Court's Final Order and Judgment, the "Effective Date" of the settlement will be 31 days after the Court enters its Final Order and Judgment. *Id.*, ¶ 19.

7. If an individual or party appeals the Court's Final Order and Judgment, the "Effective Date" of Settlement shall be the day after all appeals are finally resolved in favor of final approval and the time for any further appeal, rehearing, or reconsideration has expired. *Id.*

8. Defendants shall pay the total amount of the Qualified Class Members' claims, Class Counsel's fees and 1/3 of the costs to the Claims Administrator incurred, in four (4) payments, as follows:
   Class Members' claims shall be paid in four (4) equal quarterly payments starting ninety (90) days after the Effective Date and continuing every ninety (90) days thereafter until all four quarterly payments have been made in full.  *Id.*, ¶ 3.  Defendants will pay attorneys' fees up to $400,000 in four (4) payments: (a) $250,000 payable within 45 days of the effective date; (b) the remaining $150,000 payable in three (3) quarterly payments of $50,000 every ninety (90) days thereafter. *Id.,* ¶ 4.[3]

9. The Claims Administrator will pay Qualified Class Members an amount in each of the five (5) payments outlined in the preceding paragraph in proportion to their total allocation of the Net Settlement Fund, as described in Sections 2 and 3 of the Settlement Agreement.

---

[3] The parties have agreed to draft an amended Settlement Agreement calling for payments to be made over 24 months.

10. Amounts allocated to any Class Member who does not make a valid claim, or who elects to opt-out of the settlement, shall be retained by the Defendants and not submitted to the Claims Administrator. *Id*. ¶ 17.

## ARGUMENT

### I.   The Rule 23 Settlement Class Satisfies the Requirements of FRCP 23.

"Settlement agreements are highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and uncertainties and preventing lawsuits." *In re Nissan Motor Corp. Antitrust Litiq.,* 552 F.2d 1088, 1105 (5th Cir.1977). Before a settlement may be approved, however, a number of prerequisites must be established. First, the Court must certify the settlement class. Fed.R.Civ.P. 23(c). Second, the Court must determine preliminarily whether the settlement is fair and adequate. *See In re Checking Account Overdraft Litiq.,* No. 09–MD–02036–JLK, 2011 WL 5873389, at *6 (S.D. Fla. Nov. 22, 2011); Fed.R.Civ.P. 23(e)(2), (e)(1).

To certify a class for settlement purposes the Court must determine whether the prescriptions of Federal Rule of Civil Procedure 23 are satisfied. *See, e.g., Morefield v. NoteWorld, LLC*, 2012 WL 1355573, at *2 (S.D. Ga. April 18, 2012). Specifically, certification requires that each of the four factors set out in Rule 23(a) are satisfied, along with at least one of the conditions under Rule 23(b). *See id.* Here, the settlement class satisfies the requisite Rule 23 factors detailed below.[4] Thus, the Court should certify the settlement class.

---

[4] This is not an issue of first impression. Rather federal courts throughout Florida routinely grant class certification of wage and hour claims under Florida state law. *See, e.g., Kubiak v. S.W. Cowboy, Inc.,* 2014 WL 2625181 (M.D. Fla. June 12, 2014)(certifying opt-out Rule 23 class FLMWA claims); *Lopez v. Hayes Robertson Group, Inc.,* 2013 WL 10561294 (S.D. Fla. Sept. 23, 2013)(certifying opt-out Rule 23 class of FMWA claims regarding allegations of an illegal

### A.   <u>Numerosity.</u>

Here, there are approximately 4,500 members of the proposed settlement class.  For a variety of reasons, their joinder is impracticable.   Thus, the Rule 23(a)(1) numerosity requirement is met. *See Kilgo v. Bowman Trans.,* 789 F.2d 859, 878 (11th Cir. 1986) (numerosity satisfied where plaintiffs identified at least 31 class members).

### B.   <u>Commonality.</u>

The threshold for commonality under Rule 23(a)(2) is not high.  "[C]ommonality requires that there be at least one issue whose resolution will affect all or a significant number of the putative class members." *Williams v. Mohawk Industries, Inc.,* 568 F.3d 1350, 1355 (11th Cir. 2009) (internal quotation marks omitted); *see also Fabricant v. Sears Roebuck,* 202 F.R.D. 310, 313 (S.D.Fla.2001) (same).  Here, the commonality requirement is satisfied because there are multiple questions of law and fact that center on Defendants' class-wide pay policies and practices pertaining to the Entertainers—specifically their uniform classification of all Entertainers as independent contractors, and alleged failure to pay minimum wages—and are common to the settlement class.

### C.   <u>Typicality.</u>

The Plaintiffs' claims are typical of the settlement class for purposes of this settlement because they concern the same alleged pay policies and practices of Defendants, arise from the same legal theories, and allege the same types of harm and entitlement to relief.  Therefore, Rule

---

tip pool); *Garcia-Celestino v. Ruiz Harvesting, Inc*., 280 F.R.D. 640 (M.D. Fla. 2012)(Moody, J.) (certifying Florida state wage and hour claims); *Rosario-Guerrro v. Orange Blossom Harvesting*, 265 F.R.D. 619 (M.D. Fla. 2010)(Steele, J.)(same); *Napoles-Arcila v. Pero Family Farms, LLC*, 2009 WL 1585970 (S.D. Fla. June 4, 2009)(same); *Mesa v. Ag-Mart Produce, Inc*., 2008 WL 2790224 (M.D. Fla. July 18, 2008)(Howard, J.)(same). Class certification is appropriate even in cases where certification of an opt-in collective action is denied.

23(a)(3) is satisfied. *See Komberg v. Carnival Cruise Lines, Inc.,* 741 F.2d 1332, 1337 (11th Cir. 1984) (typicality satisfied where claims "arise from the same event or pattern or practice and are based on the same legal theory"); *Murray v. Auslander,* 244 F.3d 807, 811 (11th Cir.2001) (named plaintiffs are typical of the class where they "possess the same interest and suffer the same injury as the class members").

### D.     Adequacy.

Adequacy under Rule 23(a)(4) relates to: (1) whether the proposed class representatives have interests antagonistic to the settlement class; and (2) whether the proposed class counsel has the competence to undertake the litigation at issue. *See Fabricant,* 202 F.R.D. at 314. Rule 23(a)(4) is satisfied here because there are no conflicts of interest between the Plaintiffs and the settlement class, and Plaintiffs have retained competent counsel to represent them and the settlement class.   Class Counsel here regularly engages in wage and hour class litigation and other complex litigation similar to the present Litigation, and have dedicated substantial resources to the prosecution of the Action.   Moreover, the Plaintiffs and Class Counsel have vigorously and competently represented the settlement Class Members' interests in the Litigation. *See Lyons v. Georgia–Pacific Corp. Salaried Employees Ret. Plan,* 221 F.3d 1235, 1253 (11th Cir. 2000).

### E.     Predominance and Superiority.

Rule 23(b)(3) is satisfied for settlement purposes, as well, because the common legal and alleged factual issues here predominate over individualized issues, and resolution of the common issues for four thousand five hundred (4,500) settlement Class Members in a single, coordinated proceeding is superior to four thousand five hundred (4,500) individual lawsuits addressing the same legal and factual issues.   With respect to predominance, Rule 23(b)(3) requires that

"[c]ommon issues of fact and law ... ha[ve] a direct impact on every class member's effort to establish liability that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member." *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs, Inc.,* 601 F.3d 1159, 1170 (11th Cir.2010) (internal quotation marks omitted). Here, the predominance requirement is satisfied for settlement purposes because common questions present a significant aspect of the case and can be resolved for all settlement Class Members in a single common judgment. *See In re Checking Account Overdraft Litigation,* 2012 WL 4173458, at *3 (S.D. Fla. Sept. 19, 2012).

In sum, all of Rule 23's requirements are met for the purposes of certifying a settlement class. Thus, the Court should preliminarily certify the settlement class.

## II.     <u>Preliminary Approval of the Settlement Is Appropriate</u>

The law favors compromise and settlement of class action suits. *See In re U.S. Oil & Gas Litig.,* 967 F.2d 489, 493 (11th Cir.1992) (noting that "public policy strongly favors the pretrial settlement of class action lawsuits."); ***Newberg* § 11.25** ("The compromise of complex litigation is encouraged by the courts and favored by public policy.").  The approval of a proposed class action settlement is a matter of discretion for the trial court. *See Leverso v. SouthTrust Bank of Ala.,* 18 F.3d 1527, 1531 (11th Cir.1994).  In exercising their discretion, courts should give "proper deference to the private consensual decision of the parties." *Torres v. Gristede's Operating Corp.*, 2010 WL 2572937, at *2 (S.D.N.Y. June 1, 2010) (internal quotation marks omitted).

At the preliminary approval stage, the Court's task is to evaluate whether the settlement is within the "range of reasonableness." *Newberg* § 11.26.  "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no

obvious deficiencies and the settlement falls within the range of reason." *Smith v. Wm. Wrigley Jr. Co.,* 2010 WL 2401149, at *2 (S.D. Fla. Jun.15, 2010).  Settlement negotiations that involve arm's length, informed bargaining with the aid of experienced counsel support a preliminary finding of fairness. *See Manual for Complex Litigation,* Third, § 30.42 (West 1995) ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.") (internal quotation marks omitted).

Preliminary approval requires only an "initial evaluation" of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties. *Newberg* § 11.25.  A proposed settlement should be preliminarily approved if it "is 'within the range of possible approval' or, in other words, [if] there is 'probable cause' to notify the class of the proposed settlement."  *Fresco v. Auto Data Direct, Inc*., 2007 WL 2330895, at *5 (S.D. Fla. May 14, 2007)(quoting *Armstrong v. Board of School Directors,* 616 F.2d 305, 312 (7th Cir.1980)); *Newberg* § 11.25 ("If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness... and appears to fall within the range of possible approval," the court should permit notice of the settlement to be sent to class members); *Danieli v. IBM*, No. 08 Civ. 3688, 2009 WL 6583144, at *4 (S.D.N.Y. Nov. 16, 2009) (granting preliminary approval where the settlement "ha[d] no obvious defects" and the proposed allocation plan was "rationally related to the relative strengths and weaknesses of the respective claims asserted").

"Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005). "A presumption of fairness, adequacy, and

reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (internal quotation marks omitted). "[A] court, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Canupp v. Liberty Behavioral Healthcare, Corp.,* 447 2011 WL 6003986 (11th Cir. 2011)(quoting *Cotton v. Hinton,* 559 F.2d 1326, 1331 (5th Cir. 1977)).

The first step in the settlement process simply allows notice to issue to the class and for class members to object or opt out of the settlement.  After the notice period, the Court will be able to evaluate the settlement with the benefit of the class members' input.

A.   **The Settlement Is Fair, Reasonable, and Adequate.**

In evaluating a class action settlement, courts in the Eleventh Circuit consider the six factors set forth in *Bennett v. Behring Corp.,* 737 F.2d 982, 986 (11th Cir.1984).  Although the Court need not evaluate the *Bennett* factors in order to conduct its initial evaluation of the settlement, it may be useful for the Court to consider the criteria on which it will ultimately judge the settlement.

The *Bennett* factors are: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the anticipated complexity, expense, and duration of litigation; (5) the opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. *See id.*

Here, all of the *Bennett* factors weigh in favor of approval of the Settlement Agreement, and certainly in favor of preliminary approval.

1.   **The Likelihood of Success at Trial.**

Although Plaintiffs believe their case is strong, and they already prevailed on the

main issue in the case, it is not without risk.  "Litigation inherently involves risks." *In re Painewebber Ltd. P'ships Litig.,* 171 F.R.D. 104, 126 (S.D.N.Y. 1997). Indeed, "if settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *In re Ira Haupt & Co.,* 304 F. Supp. 917, 934 (S.D.N.Y. 1969); *see also Velez v. Majik Cleaning Serv., Inc.,* No. 03 Civ. 8698, 2007 WL 7232783, at *6 (S.D.N.Y. June 25, 2007).  In weighing the risks of establishing liability and damages, the court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 356 (internal quotation marks omitted).

A trial on the merits would involve significant risk as to both liability and damages, as Defendants have asserted numerous substantive and procedural defenses.  For example, although Plaintiffs prevailed on their claim that Defendants misclassified them as independent contractors and are owed minimum wages and overtime wages under the FLSA, and FLMWA, Defendants could have appealed this finding.  If Defendants were successful on appeal, it would have provided a complete defense to Plaintiff's claims. *See Hilborn v. Prime Time Club, Inc.,* 2012 WL 9187581 (E.D. Ark. July 12, 2012) (adult entertainers held to be independent contractors and thus not subject to FLSA coverage); *Matson v. 7455, Inc.,* 2000 WL 1132110 (D.Or. Jan. 14, 2000) (same).

Similarly, Defendants strenuously argue that, even to the extent Plaintiffs prevailed on the employee versus independent contractor argument, relevant authority supports their contention that Plaintiffs suffered little or no damages, because the money that they received from their patrons constituted service fees rather than tips, and thus could be used to satisfy Defendants' minimum wage obligations, to the extent same existed. *See Doe v. Cin-Lan, Inc.,*

17

2010 WL 726710, at *7 (E.D. Mich. Feb. 24, 2010) (if amounts received by adult entertainers from club's patrons was deemed service charges could serve as set-off to plaintiff's claims). Indeed, Defendants contend that Plaintiffs would owe Defendants money because the service fees substantially exceeded the amount of the minimum wage Plaintiffs would have made. *See Geter v. Galardi South Enterprises*, 2014 WL 4290550 (S.D. Fla. Aug. 29, 2014) (denying a motion by a group of exotic dancers to dismiss counterclaims that had been filed against them).

Defendants also contend that, even if Defendants do not obtain the dance fee reimbursement discussed above, Defendants would be required to remit any remuneration technically found to be owing, not to the Plaintiffs themselves but rather ***to the IRS*** in order to satisfy the statutory withholdings due in regard to the tip income never reported by the Plaintiffs. Defendants also argue that none of the Entertainers who are eligible to participate in this action ever worked 40 or more hours in a workweek, as admitted by the named Plaintiffs in this case during their depositions.

The Parties also dispute the nature and amount of damages that Plaintiffs can recover under the FLSA and the FLMWA.   While Plaintiffs contend that they are entitled to reimbursement of all monies paid to Defendants or Defendants' DJs, house moms and other staff, Defendants contend that Plaintiffs sole remedy under the FLSA and FLMWA was the appropriate minimum wage.   Likewise, Defendants contend that liquidated damages are inappropriate under the facts at bar and that the statute of limitations applicable to Plaintiffs claims should be shortened because any violations of the law were not willful.

While Plaintiffs believe that they would ultimately have defeated each of Defendants' aforementioned arguments, this would require significant factual development and favorable outcomes at trial and on appeal regarding issues of first impression within

18

the Eleventh Circuit, all of which is inherently uncertain and lengthy.  The proposed settlement alleviates this uncertainty.  This factor weighs in favor of preliminary approval.

### 2.   Range of Possible Recovery and Range at Which Settlement is Fair.

The relief sought in the settlement is reasonable and within the range of remedies permitted by law.  Under the settlement, each Entertainer is receiving a substantial proportion of her alleged minimum wage/overtime deficiency.  "While Class Members' damages could exceed the amount provided in the Settlement, the Plaintiffs have no guarantee they will prevail." *Waters v. Cook's Pest Control, Inc*., 2012 WL 2923542, at *13 (N.D. Ala. July 17, 2012); *see also  Behrens v. Wometco Enterprises, Inc*., 118 F.R.D. 534, 542 (S.D. Fla. 1988) ("A settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery."); *In re: Newbridge Networks Securities Litigation*, 1998 WL 765724, at *2 (D.D.C. October 23, 1998) ("an agreement that secures roughly six to twelve percent of a *potential* recovery ... seems to be within the targeted range of reasonableness").

When the Settlement here is taken as a whole, the relief proposed is fair, adequate, and reasonable when compared to the range of possible recovery in this action.

### 3.   Litigation Through Trial Would Be Complex, Costly, and Long.

By reaching a favorable settlement prior to trial, Plaintiffs seek to avoid significant expense and delay and ensure a speedy, risk-free recovery for the class.  "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001).  This case is no exception, with approximately 4,500 Rule 23 class members and claims under federal and state law.

Although there has been voluminous discovery already, additional discovery would be required to prepare for the anticipated trial on damages and the remaining liability issues, including depositions of numerous opt-in plaintiffs.   Further, Defendants would have opposed certification of the Rule 23 class, had the matter not resolved, and sought to decertify same, even in the event that the Court ultimately certified a Rule 23 class.

Likewise, preparing for and putting on evidence at such a trial would consume tremendous amounts of time and resources and demand substantial judicial resources. Given the unsettled nature of the law at issue in the case, any judgment would likely be appealed, extending the duration of the litigation.   The settlement, on the other hand, makes monetary relief available to Class Members in a prompt and efficient manner. Therefore, the third *Bennett* factor weighs in favor of preliminary approval.

### 4.   The Reaction to the Settlement Has Been Positive.

Although notice of the settlement has not yet issued to the class, the Named Plaintiffs have expressed their approval of the settlement by signing the Settlement Agreement.   Further, to the extent Plaintiffs' counsel has received inquiries from class members regarding the settlement, all Class Members have reacted favorably to the settlement to date. **Gallagher Decl. ¶ 58**.   After notice issues and Class Members have had an opportunity to weigh in, the Court can more fully analyze this factor at the final approval stage.

### 5.   Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly.

The parties have completed enough discovery to recommend settlement.   The proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004)

20

(internal quotation marks omitted). "[T]he pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement... but an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 176 (internal quotation marks omitted). The parties' discovery here meets this standard. As discussed above, Defendants produced voluminous documents pertaining to their corporate policies, payroll records, and workweek information. Gallagher Decl. ¶ 30. In addition, the Parties conducted 14 depositions during the initial discovery in this case. *Id*., ¶ 32. Likewise, Plaintiffs' counsel interviewed many of the opt-in Plaintiffs regarding the independent contractor misclassification and minimum wage claims at issue here. *Id., ¶ 33*.

Based on these circumstances, the Parties were well equipped to evaluate the strengths and weaknesses of the case. *See Frank*, 228 F.R.D. at 185 (approving settlement of case "in relatively early stages of discovery" where parties had exchanged extensive information regarding the defendant's time and pay practices and where counsels' negotiations, while "cooperative," had "been in no way collusive"); *see also Khait*, 2010 WL 2025106, at *4-5 (approving settlement where the parties exchanged payroll and time data and policies and procedures and where plaintiffs interviewed numerous opt-ins regarding their duties and hours worked). This factor also weighs in favor of preliminary approval.

**III.   The Proposed Notices Are Appropriate.**

The contents of the proposed Notice, attached as Exhibit B to the Gallagher Decl., fully comply with due process and Federal Rule of Civil Procedure 23. Pursuant to Rule 23(c)(2)(B), the notice must provide:

the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must concisely and clearly state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through counsel if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

The Notices satisfy each of these requirements. They also explain the allocation formula, the basis on which each Class Member's award was determined, and the allocation of attorneys' fees and costs, and provide specific information regarding the date, time, and place of the final approval hearing and how to object to or exclude oneself from the settlement. This information is adequate to put class members on notice of the proposed settlement and is well within the requirements of Rule 23(c)(2)(B).

The Parties have agreed that the Claims Administrator will mail the Notices to the last known address of each class member within 14 days of the Court's preliminary approval order. The Claims Administrator will take all reasonable steps to obtain the correct address of any Class Members for whom notices are returned as undeliverable. Class Members will have sixty (60) days to submit a claim form, opt out of or object to the settlement. Settlement Agreement, ¶ 18. Thereafter, the Claims Administrator will mail Class Members an additional payment, until such time that Class Members have received their entire settlement allocation within the 24-month pay out period. *Id.,* ¶ 17.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court preliminarily approve the settlement, certify the settlement class, appoint Plaintiffs' counsel as Class Counsel, approve the Settlement Notice, and enter the Proposed Order attached

hereto as **EXHIBIT 2**.

Dated: June 29, 2017.

Respectfully submitted,

*/s/ Andrew R. Frisch*
Andrew R. Frisch, Esq.
MORGAN & MORGAN, P.A.
600 North Pine Island Road, Suite 400
Plantation, Florida 33324
T: (954) WORKERS; F: (954) 327-3013
E-Mail: AFrisch@forthepeople.com

Jack Clyde Morgan, III, Esq.
ALOIA ROLAND & LUBELL, PLLC
2254 1st Street
Fort Myers, Florida 33901
T0: (239) 791-7950; F: (239) 791-7951
E-Mail:  jmorgan@FloridaLegalRights.com

-and-

John B. Gallagher, Esq.
JOHN B. GALLAGHER, P.A.
2631 East Oakland Park Blvd., Suite 201
Fort Lauderdale, Florida 33306
T: (954) 524-1888; F: (954) 524-1887
E-Mail:  gal2701@aol.com

*Attorneys for Plaintiffs and the Proposed*
*Settlement Class*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 29th day of June 2017, I electronically filed the

foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of

electronic filing to all Counsel of Record.

*/s/  Andrew R. Frisch*
Andrew R. Frisch, Esq.

23