UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 15-62152-CIV-DIMITROULEAS/SNOW

SARAH SHAW, REBECCA WILES,
And ASHLEY HOWELL, individually,
and on behalf of all others similarly
situated,

    Plaintiffs,

v.

THE SET ENTERPRISES, INC., *et.al.*,

    Defendants.

## FINAL ORDER AND JUDGMENT GRANTING MOTION FOR FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT, APPROVAL OF SERVICE AWARD, AND APPROVAL OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

This case comes before the Court on Plaintiffs' Motion for Final Approval of the Class Action Settlement and Approval of Service Awards, and Incorporated Memorandum of Law in Support ("Motion for Final Approval") and Plaintiffs' Motion for Approval of Attorneys' Fees and Reimbursement of Expenses ("Motion for Fees").  The Court held a final fairness hearing on October 27, 2017 (the "Fairness Hearing") concerning the Motion for Final Approval and the parties' Joint Stipulation of Class Action Settlement Agreement and Release ("Settlement Agreement"), which the Court previously preliminarily approved.

In this case, Plaintiffs allege that Defendants own and/or operate three (3) adult entertainment clubs that conduct business under the moniker "Cheetah," with locations in Hallandale, Florida, Pompano Beach, Florida, and Palm Beach, Florida (the "Nightclubs").  Plaintiffs and the Class Members claim to have performed as entertainers at one or more of the Nightclubs.  The

1

Class consists of all dancers who performed for at least three (3) days at Cheetah Pompano, Cheetah Hallandale or Cheetah Palm Beach at any time from October 13, 2010 to June 30, 2017. As entertainers, Plaintiffs and the Class Members were primarily responsible for entertaining patrons at the Nightclubs.

At all times throughout the relevant time period, Plaintiffs received no hourly wage or salary from the Nightclubs based upon their classification as non-employees (colloquially termed "independent contractors"). In this lawsuit (also referred to herein as the "Litigation"), Plaintiffs alleged that Defendants misclassified them as independent contractors, when they were actually employees, and as a result Defendants failed to pay them legally mandated minimum wages and/or overtime as required under the Fair Labor Standards Act ("FLSA"), and the Florida Minimum Wage Act ("FLMWA").

Plaintiffs alleged that Defendants violated the FLSA and FLMWA, by failing to pay the entertainers the required minimum wage and/or overtime wages in one or more workweeks. As such, Plaintiffs claimed that Defendants were liable to them for an amount equal to the minimum wage for all hours worked and time and one-half minimum wage for any overtime hours. *See* Complaint (D.E. 1); Amended Complaint (D.E. 20).

Although the Court granted Plaintiffs summary judgment holding that they were employees under the FLSA and not independent contractors, Defendants maintain that neither Plaintiffs nor any of the entertainers were misclassified as independent contractors, and assert that Plaintiffs and the putative class therefore fall outside of the coverage provided by the FLSA and FLMWA. The parties also disagree about the type and amount of damages to which each entertainer would be entitled (if any).

A.      **Procedural History**

Plaintiffs commenced this case by filing a Complaint on October 13, 2015 alleging violations of the FLSA. Thereafter, they filed an Amended Class and Collective Action Complaint on November 23, 2015, in which they added class action claims under the Florida Constitution ("FLMWA"). *See* D.E. 20. Subsequently, Plaintiffs moved for conditional certification of a collective action under the FLSA and sought to send Court-approved notice to all Entertainers similarly situated to them. *See* D.E. 125. The Court granted Plaintiffs' Motion for Conditional Certification in part by Order dated December 5, 2016. *See* D.E. 134. 37 additional Entertainers (40 total including the named Plaintiffs) opted in to the case by filing their consents to join prior to the expiration of the opt-in period. *See* Docket, generally.

On December 28, 2016, Defendants filed their Motion for Summary Judgment. D.E. 150. Plaintiffs filed their Opposition to Defendants' Motion for Summary Judgment on January 11, 2017. D.E. 160. Thereafter, Defendants filed their Reply on their Motion for Summary Judgment on February 10, 2017. D.E. 173. By Order dated March 17, 2017, the Court granted in part and denied in part Defendants' Motion for Summary Judgment. D.E. 186. Specifically, the Court held that Plaintiffs were employees subject to the coverage of the FLSA and not independent contractors, and that Defendants could not credit against Plaintiffs' wages the dance tips Plaintiffs were paid by patrons. *See id.* The Court further held that Plaintiffs failed to create an issue of fact as to whether they worked in excess of 40 hours per week and therefore granted Defendants' Motion with regard to the named Plaintiffs' overtime claims. *Id.*

Following the Court's Order on Defendants' Motion for Summary Judgment, on April 19, 2017, the Parties agreed to attend a settlement conference to be conducted by a Magistrate

Judge and filed a Joint Motion for Order Referring the Parties to Attend a Settlement Conference before Magistrate Judge Edwin G. Torres or Jonathan Goodman.  D.E. 200.

At that settlement conference, the Parties fully resolved all pending claims on a class-wide basis. In order to conform the pleadings to the scope of the Parties' settlement, Plaintiffs filed an amended operative Complaint, the Second Amended Complaint on May 15, 2017.  D.E. 228.

On June 29, 2017, the Plaintiffs filed an Unopposed Motion for Preliminary Approval of Settlement, Conditional Certification of the Settlement Class, Appointment of Plaintiffs' Counsel as Class Counsel, and Approval of the Proposed Notice of Settlement and Class Action Settlement Procedure and Memorandum of Law in Support. D.E. 237.  On June 30, 2017, the Court granted Plaintiff's Unopposed Motion for Preliminary Approval of Settlement, Conditional Certification of the Settlement Class, Appointment of Plaintiffs' Counsel as Class Counsel, and Approval of the Proposed Notice of Settlement and Class Action Settlement Procedure ("Order"). D.E. 239.

On August 7, 2017, the Class Notices were mailed to all 4,520 Class Members. To be considered timely, all Completed Claim Forms, Opt-Out Forms and objections had to be postmarked by October 6, 2017.  As of the Fairness Hearing, assuming all such postmarked submissions had been received, 108 Class Members have responded, of which none objected, 11 opted out and 103 submitted what appear to be valid claims.

### B. Discovery

During the course of discovery and as part of settlement negotiations, Defendants made thousands of pages of documents and computer records available to Plaintiffs and their expert accountant. These documents included corporate policies, Entertainer onboarding documents, independent contractor and licensee agreements between most class members and one or more of the Defendants, internal records pertaining to the period of time each class member performed at one of the Nightclubs, and Entertainer rosters. The Parties also conducted 14 depositions, including the depositions of the corporate representative for several of the Defendants and twelve of the Plaintiffs and opt-in Plaintiffs. In addition, Plaintiffs' counsel interviewed many of the opt-in Plaintiffs regarding the alleged wage violations at issue in the case.

### C. Settlement Negotiations and Mediation

On March 7, 2017, the Parties participated in half-day mediation in Fort Lauderdale, Florida, with the assistance of Mediator, Cindy Hannah. Ms. Hannah is a very knowledgeable and skilled wage and hour class action mediator. Ultimately, the parties were unable to reach a settlement at mediation and the mediation reached an impasse.

Subsequent to the half-day mediation, the Parties continued their settlement discussions. However, they were still unable to reach an agreement to resolve the instant claims. Following the Court's Order on Defendants' Motion for Summary Judgment, on April 19, 2017, the Parties commenced renewed settlement talks, and agreed to attend a settlement conference to be conducted by a Magistrate Judge and filed their Joint Motion for Order Referring the Parties to Attend a Settlement Conference before Magistrate Judge Edwin G. Torres or Jonathan

Goodman.  *See* D.E. 200. In the three (3) weeks leading up to the Magistrate-conducted settlement conference, the Parties engaged in intense settlement negotiations, regarding both the monetary recovery and the material non-monetary terms.  To that end, the Parties exchanged half a dozen drafts and counter-drafts of material terms in the three (3) weeks prior to the settlement conference. At the settlement conference, the Parties fully resolved all pending claims on a class-wide basis.

### D. The Class Received Adequate Notice

On June 30, 2017, the Court took the first step in the settlement approval process when it granted preliminary approval of the settlement and directed that notice be mailed to Class Members. *See* D.E. 239.

On August 7, 2017, the Class Notices, were mailed to all 4,520 Class Members. Under the Settlement Agreement, the post-mark deadline to make a claim, opt out or object was October 6, 2017.  These dates were clearly stated in the Class Notice.

As of the cut-off date of October 6, 2017, no Class Members objected to the settlement, 103 Class Members opted in, and 11 Class Members excluded themselves.

### E. Final Approval is Warranted

Having considered the Motion for Final Approval, the supporting memorandum of law, the Declaration of John B. Gallagher and exhibits thereto; the oral arguments presented at the Fairness Hearing; and the complete record in this matter, for the reasons set forth therein and stated on the record at the Fairness Hearing and for good cause shown,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED, THAT:**

1. This Order incorporates by reference the definitions in the Settlement Agreement,

and all capitalized terms used in this Final Judgment shall have the same meanings as set forth in the Settlement Agreement, unless otherwise defined herein.

2. The Court certifies the Rule 23 and FLSA Classes for purposes of settlement.

3. This Court approves the Settlement Agreement and all terms set forth in the Settlement Agreement and finds that the Settlement Agreement meets the requirements of Rule 23 and the FLSA. The Settlement Agreement is, in all respects, fair, reasonable, adequate, not a product of collusion, and the resolution of a bona fide dispute. *See* Fed. R. Civ. P. 23(e); *see also Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982).

4. The $1,900,000.00 maximum settlement amount is substantial and includes meaningful payments to Class Members. In reaching this conclusion, the Court is satisfied that the settlement was fairly and honestly negotiated. It was the result of vigorous arm's-length negotiations, which were undertaken in good faith by counsel with extensive experience in litigating wage and hour class actions, and serious questions of law and fact, exist such that the value of an immediate recovery outweighs the mere possibility of further relief after protracted and expensive litigation. *See In re: U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) (noting that "public policy strongly favors the pretrial settlement of class action lawsuits.").

5. The parties' judgment that the settlement is fair and reasonable, as well as the Class's favorable response to the settlement, weighs in favor of final approval of the settlement. *See, e.g., Francisco v. Numismatic Guar. Corp. of Am.*, 2008 WL 649124, at *12 (S.D. Fla. 2008) ("A low percentage of objections will confirm the reasonableness of a settlement and support its approval.") (citing *Stoetzner v. United States Steel Corp.,* 897 F.2d 115, 118-19 (3d Cir. 1990)); *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1381 (S.D. Fla. 2007) ("A low percentage

of objections demonstrates the reasonableness of a settlement.").

6. The Court therefore enters Judgment in accordance with the Settlement Agreement. Upon the effective date of the Settlement, each Class Member shall release all Florida state law claims asserted in this lawsuit through June 30, 2017, along with all other claims arising out of or relating to the same alleged conduct, as set forth in the Settlement Agreement, and attorneys' fees and costs to date related to such claims.

7. All Class Members who opted in and/or submitted valid claims additionally forever and fully release all FLSA claims asserted in this lawsuit through June 30, 2017, including all FLSA claims for unpaid overtime wages, liquidated damages, and attorneys' fees and costs related to such claims.

8. This Court awards Class Counsel 21.5% of the Maximum Settlement Payment, or $400,000.00, as attorneys' fees and $40,398.92 for costs and expenses incurred in this Litigation, for a total of $440,398.92, to be paid from the Maximum Settlement Payment as set forth in the Settlement Agreement.

9. The Court finds that the amount of fees requested is fair and reasonable using the "percentage of recovery" method, which is consistent with the dictates of the Eleventh Circuit. *Camden I Condominium Ass'n v. Dunkle,* 946 F.2d 768, 771 (11th Cir. 1991); *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1333 (S.D. Fla. 2001).

10. Class Counsel's request for 21.5% of the Maximum Settlement Payment is also consistent with the trend in this Circuit. *See, e.g.*, *Seghroughni v. Advantus Rest., Inc.*, 2015 WL 2255278, at *1 (M.D. Fla. May 13, 2015) ("An attorney's fee… which is one-third of the settlement fund… is fair and reasonable in light of the results obtained by the Lead Counsel, the risks

associated with this action, the Lead Counsel's ability and experience in class action litigation, and fee awards in comparable cases."); *Wolff v. Cash 4 Titles*, 2012 WL 5290155, at *4 (S.D. Fla. Sept. 26, 2012) ("One-third of the recovery is considered standard in a contingency fee agreement."); *Hosier v. Mattress Firm, Inc*., 2012 WL 2813960, at *4 (M.D. Fla. June 8, 2012) (approving a common fund FLSA settlement which provided 30% of the common fund for attorneys' fees and costs); *Morefield v. NoteWorld, LLC*, 2012 WL 1355573 (S.D. Ga. April 18, 2012) (class settlement approved with 33 1/3 of the common fund payable as attorneys' fees); *Atkinson v. Wal-Mart Stores, Inc*., 2011 WL 6846747, at *6 (M.D. Fla. Dec. 29, 2011) (approving class settlement with one-third of maximum common fund apportioned as attorneys' fees); *Gutter v. E.I. DuPont De Nemours & Co.,* No. 1:95–cv–02152–ASG, D.E. 626 at 7 (S.D. Fla. May 30, 2003) (awarding class counsel 33.3% of the Settlement Fund as attorneys' fees ($1,201,728.42) because they expended significant time and resources on a purely contingent basis under the common fund theory); *In re Terazosin Hydrochloride Antitrust Litig.,* No. 1:99–md–01317–PAS, Doc. No. 1557 at 8–10 (S.D. Fla. Apr. 19, 2005) (awarding class counsel 33.3% of settlement fund in part because they prosecuted the action on a wholly contingent basis).

11.   The attorneys' fees requested were entirely contingent upon success in this litigation. Class Counsel expended significant time and effort and advanced costs and expenses without any guarantee of compensation.

12.   This Court approves the following service payments, to be paid from the Maximum Settlement Payment as set out in the Settlement Agreement: $5,000 to Sarah Shaw; $5,000 to Rebecca Wiles; and $5,000 to Ashley Howell. The service payments are in recognition of the

Class Representative Plaintiffs' active participation in this action and service to the settlement Class, as well as the risks they undertook for the benefit of the Class. These service payments are reasonable in light of the efforts this individual expended in furthering the interests of the Class. *David v. American Suzuki Motor Corp.,* 2010 WL 1628362, at *6 (S.D. Fla. Apr. 15, 2010) ("There is ample precedent for awarding incentive compensation to class representatives at the conclusion of a successful class action.").

13. Defendants shall pay the total amount of the Qualified Class Members' claims, Class Counsel's fees and costs, and Claims Administrator fees (if any), once determined, in four equal payments over the course of the twenty-four (24) month period commencing thirty (30) days following the Effective Date and every ninety (90) days thereafter, per the parties' agreement, although not reflected as such in the Settlement Agreement. The Parties have acknowledged in writing to the Court and to each other that the agreement is for the Qualified Class Members to be paid over the course of a twenty-four (24) month period.[1]

14. Defendants shall pay the total amount of the service payments sixty (60) days after the Effective Date.

15. The case is dismissed with prejudice and without costs to any party. All Class Members are barred and permanently enjoined from participating in any other individual or class lawsuit against the Releasees concerning the Released Claims, as defined in the Settlement

---

[1] At the Fairness Hearing, the Parties explained that they are still in the process of finalizing the allocation to each Qualified Class Member. To the extent the Parties are unable to agree on the final allocation to one or more Qualified Class Member, the Court reserves jurisdiction to resolve this issue and any pendant issue (i.e. supplemental attorneys' fees/costs, if any). The parties have agreed that any such dispute as to calculation will be litigated before the Magistrate Judge.

Agreement.

16. Without affecting the finality of this Judgment and Order, the Court reserves continuing and exclusive jurisdiction over parties to the settlement agreement to administer, supervise, construe, and enforce the Settlement Agreement in accordance with its terms for the mutual benefit of the parties.  To that end, the Court explicitly reserves jurisdiction to resolve any issues among the Parties regarding the calculations of the settlement amount allocations for each class member.

17. The Parties having so agreed, good cause appearing, and there being no just reason for delay, it is expressly directed that this Final Judgment and Order be, and hereby is, entered as a final order.

18. The Clerk is directed to **CLOSE** this case and **DENY AS MOOT** any pending motions.

**DONE AND ORDERED** in Chambers, at Fort Lauderdale, Broward County, Florida this 30th day of October 2017.

*[signature]*
WILLIAM P. DIMITROULEAS
United States District Judge

Copies furnished to:
Counsel of record